Howard A. Zeller, J.
In this action for declaratory judgment plaintiffs seek determination of their employment status on the staff of the Binghamton Public Library. They request summary judgment. Defendant City of Binghamton and the Binghamton Municipal Civil Service Commission join in the motion for summary judgment but seek opposite relief from plaintiffs’ demand. Defendant Trustees of the Binghamton Public Library, a separate corporate entity, concur with plaintiffs’ position.
The City of Binghamton and the Civil Service Commission contend the individual plaintiffs are employees of the City of Binghamton, rather than of the Binghamton Public Library, and as city employees are subject to a local city law requiring officers and certain employees of the city to reside within city limits. The individual plaintiffs reside outside the city limits but heretofore had been granted waivers by the commission of this residency requirement.
The commission on January 25, 1972 advised city department heads and the Director of the Binghamton Public Library that as a matter of policy the commission would no longer grant waivers of city residency unless it was proven conclusively that nonresident employees could not be replaced by city residents. May 31, 1972 was designated as a deadline for such proof and requests for waivers.
The residency requirement was first enacted by Local Law No. 1 of the Local Laws of 1951 and adopted as an amendment to the city’s Supplemental Charter of 1917. Subsequent amendments authorized a waiver of residency and exempted certain classes of employees from the residency requirement. Library employees were not in the exempted classes. Section 13 of the Supplemental Charter now states in part:
“No person-shall be eligible for appointment * * * as a city employee, unless at the time of his * * * appoint *1007 ment, he is a hona fide resident of said city * * * and whenever any * * * employee of said city shall cease to be a resident * * * the * * * position shall thereby become vacant * * *.
“ Notwithstanding * * * the Municipal Civil Service Commission * * * shall have the power to waive the residence requirements * * * under the following circumstances :
“ a Whenever * * * there are no applicants residing in the City of Binghamton who meet the necessary requirements * * *.
11 b * * * such non-resident appointee must establish a bona fide residence * * * within one year * * * unless additional time is granted * * * by the * * * [commission].
“ c Any Civil Service employee * * * presently a nonresident * * * may be given a waiver of residency * * * up to one year * * * and every employee receiving such waiver must become a bona fide resident * * * during the time set forth in the waiver, unless additional time is granted
The primary issue is whether the seven individual plaintiffs are employees of the Binghamton Public Library, a separate public corporate entity which has no residency requirements for its staff, or are employees of the City of Binghamton and subject to its local laws governing city residence of its employees. The companion question is whether the facts before the court are sufficient to permit a determination as a matter of law that the individual plaintiffs are employees of one or the other corporate entities here involved. (CPLR 3212.)
The Binghamton Public Library was granted a charter by the Regents of the University of the State of New York in 1902, creating a public corporation without tax-raising powers. It is a public corporate entity separate from the municipal entity of the City of Binghamton. It is not a department or part of the municipal corporation of the city.
The 1902 charter of the Binghamton Public Library was granted under the provisions of section 27 of chapter 378 of the Laws of 1892, that substantially still appear and exist in article 5 of the Education Law. Under these statutory provisions, chartered public libraries are managed by trustees who are empowered to appoint employees, fix salaries, and discharge employees. This library is autonomous in its daily operation including the duties, assignments and utilization of its person *1008 nel. The city concedes the power of the library trustees to negotiate labor contracts with the library personnel’s union designee. The city does not engage in any of these activities.
The city contends that neither the separate corporate structure of the library nor the autonomy the trustees exercise in its operation should be a factor in determining the issue here, but that the “ practicalities of the situation ” should prevail in favor of the city’s view that the library is, in essence, but an extension or a department of the city and therefore library employees are city employees.
To substantiate this position, the city and commission rely upon the fallowing facts:
1. ) That the plaintiff, Binghamton Public Library Unit of the Broome County Chapter of the Civil Service Employees Association, Inc. (C.S.E.A.), entered into an agreement for 1971 with the city wherein the city is designated as the employer of the library’s personnel who are referred to as employees of the city.
2. ) That all library personnel are paid through the city payroll, they enjoy State retirement and health insurance benefits paid for in part by the city and enjoy the administrative benefits of the city Municipal Civil Service Commission.
3. ) The realty and buildings occupied by the library are owned by the city.
4. ) Funds for the operation of the library are provided by the taxes collected by the city and additional revenues from outside sources.
The city then argues ‘ ‘ plaintiffs have not denied or renounced the benefits outlined above and it seems unlikely that they intended to do so by * * * this action. They must therefore be seen as being employees of the City * * * subject to the rules and conditions of employment applicable to City employees. Specifically, they must adhere to the residency requirements in question.”
In further support of their position that the individual plaintiffs are library rather than city employees, plaintiffs draw attention to these facts:
1. ) 25% of library operating funds come from other than city tax levy sources, as substantiated by the library’s annual report. Thus, as to these funds paid to the city, it acts only as a conduit.
2. ) The full salary of a library film clerk, half the salary of a clerk and a professional librarian and portions of the salaries and fringe benefiits for reference librarians are paid from sources outside of city tax funds.
*1009 3.) The library board of trustees negotiated a contract with the C.S.E.A with respect to salaries and working conditions for 1972. The terms negotiated concerned compensation, work days and weeks, overtime, holidays, vacations, personal and sick leave, pension and health insurance provisions and grievance procedures. Significantly, the immediate library supervisor and the director of the library are designated as its representatives in grievance proceedings.
The city overlooks the role and responsibilities assumed by it when it applied and had granted in 1902 a free public library charter under the predecessor statute to the present section 79 of the General Municipal Law and section 27 of chapter 378 of the Laws of 1892, as now substantially set forth in part II of article 5 of the Education Law.
A fair reading of those enabling provisions leads to the conclusion that thereunder a municipality is the tax levying agency for and responsible for the fiscal support of a public library it is instrumental in creating. This responsibility is necessarily the city’s as the chartered libraries have no tax powers. The true function the city assumed in relation to the chartered library is that of fund-raising and channeling of funds to the library for its support. This in no way establishes an employer-employee relation between the city and the library personnel. However, for budgetary purposes, the city’s need to review labor contracts is obvious. (Matter of Brooklyn Public Lib. v. Craig, 201 App. Div. 722, mot. for lv. to app. den. 202 App. Div. 815; County of Erie v. Board of Trustees, 62 Misc 2d 396.)
Nor is such a relationship created by the fact that the city, for obvious reasons of economy of operation, chose to channel some or even all library salaries through the city payroll. This was and is in furtherance of its assumed funding function. The same is a fair conclusion concerning furnishing buildings for the library’s use. The providing of services and benefits collateral to salary, the withholding of taxes, making social security payments and providing such things as- insurance do not create an employer-employee relationship, the sine qua non of which is control. (Matter of Morton, 284 N. Y. 167,173; Matter of Hardy v. Murphy, 29 A D 2d 1038, 1039; Matter of Savoy Ballroom Corp. [Lubin] 286 App. Div. 684, 691; County of Erie v. Board of Trustees, supra.)
The library has undenied control over hiring, firing (even though a municipal civil service board’s services' might be used), conditions and terms of work, labor negotiating powers with relation thereto, direct supervision of daily efforts of library *1010 personnel and fixation of salaries within the limits of budgetary provisions.
There are no questions of fact sufficient to require a trial; plaintiffs have established as a matter of law the right to á declaratory judgment as follows: 1) the individual plaintiffs are employees of the Binghamton Public Library and not of the City of Binghamton and 2) the provisions of section 13 of the city’s Supplemental Charter regarding residency do not apply to library employees and cannot provide a basis for terminating library staff' employment or deeming such employment terminated because of nonresidency.
Plaintiffs’ motion for summary judgment should be granted accordingly.