Fuchsberg, J.
(concurring in part and dissenting in part). The issues raised on these four appeals involve the hard-earned seniority rights of literally thousands of educators in New York City and, indeed, throughout the State.[1] In my view, it would be both unwise and unfair to permit the admittedly severe exigencies occasioned by New York City’s present financial crisis to outweigh the clear statutory protections of subdivision 3 of section 2585 of the Education Law, designed as it was to further both the integrity of our school systems and the rights of those who work in them. In fact, the economic retrenchment which the abolition of the positions affected here is intended to bring about can be accomplished just as well without undermining long-respected seniority standards. I, therefore, most respectfully suggest that both the schools and their teachers would, in the long run, be better served by a careful adherence to the statute’s requirements *468 than by the short-term expedients, however appealing at the moment, which are granted the city today. Accordingly, I dissent from so much of the majority’s holding as I believe is inconsistent with the language and intent of subdivision 3 of section 2585.
All of the appellants before us have worked for the New York City School District (hereinafter the "board”) in other capacities before assuming their present responsibilities. Most of the counselors in these cases were formerly classroom teachers. Their concern emanates from two phrases in subdivision 3 of section 2585, which reads: "Whenever a board of education abolishes a position under this chapter, the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued.” (Emphasis added.)
The petitioners take the position that the words "in the system” following "seniority” have a separate and distinct meaning apart from the phrase "within the tenure of the position abolished”. They argue that the latter phrase establishes the group or "tenure'area” within which someone must be discontinued, while the phrase "least seniority in the system ” establishes which employee within the group must be the one to go, and that it does so on the basis of the total time each employee has been employed by the board of education. A number of factors strongly support that interpretation of the statute.
The first is its legislative history. When the language of subdivision 3 of section 2585 was first enacted in 1940, a memorandum written by the Governor’s legal counsel, attached to the bill jacket, stated: "The bill is applicable to all cities of the State. It provides that when the Board of Education abolishes a position, layoffs shall be in the inverse order of seniority 'in the system within the tenure’ of the position abolished. It is clear from the bill that service within the system—meaning the board of education—is counted. It would not matter whether the employee started as kindergarten teacher and became a high school principal, the total service would be counted. This is in accordance with the State Civil Service Law and decisions of the court.” (Memorandum of Nathan R. Sobel, Bill Jacket Collection, L 1940, ch 754, pp 13-14 [emphasis added].)
In a similar memorandum, also attached to the bill jacket, the New York State Teachers Association, which sponsored *469 the bill, indicated that the broadest interpretation of the modifying words "in the system” reflected the association’s intention as well, noting as did the Governor’s counsel, that this interpretation of seniority would bring educational employees into line with other civil service employees (Memorandum, Bill Jacket Collection, L 1940, ch 754, pp 9-10).
Consistent with those expressions of intent, the Commissioner of Education, in his first interpretation of the new law, made clear that seniority was to be calculated on the basis of an educator’s total time as an employee of the district. In Matter of Ducey (65 NY St Dept Rep 65, 68) he stated that: "I therefore conclude that the statute in referring to seniority in the system covers the entire consecutive time that a teacher has been employed by the board of education on a permanent basis. The date when a teacher commenced her service in the system is the date she started her probationary period, if that was the first date that she became connected with the system. ” (Emphasis added.)
From the Ducey decision to the present, the commissioner has continued to interpret the words "in the system” to mean total time employed by the particular school district (see Matter of Widmer, 72 NY St Dept Rep 20, 21, for a more recent repetition of the definition of seniority as commencing on the date when an employee first becomes "connected” with the system). I suggest that this interpretation accords perfectly with the legislative intent and ought to be observed by our court in the cases before us, all the more so since the petitioners all undertook their employment and earned their seniority under it.
The present commissioner, however, joins with the board in urging that seniority should be counted only insofar as it was earned in the present "tenure area”. The counselors, for example, would be credited only with the time they have spent in the counseling license area; teachers would be credited only with the time spent in tne particular subject they now are licensed to teach and in fact do teach. Thus, if the board’s view prevailed, long years spent in service to the board in any other educational capacity would count for nothing in the determination of which counselors must be laid off.
The board attempts to explain the statutory words "in the system” as being synonymous with "across individual schools”, suggesting that, were the former words not there, *470 the phrase "within the tenure of the position abolished” would mandate dismissals within individual schools. There is simply no precedent for such a view. The statute identifies the employer as the board of education, not the individual school; it is the board, not the school, which abolishes a position. And the board does not point to a single instance to date wherein it has been held that the tenure area would otherwise be limited to a particular school within a multischool district (cf. Matter of New York City School Bds. Assn. v Board of Educ., 39 NY2d 111).
When massive cutbacks in personnel must be made in a district the size of New York City’s, flexibility is no doubt an asset. But its benefits must be balanced against those conferred on both the system and its employees by a stable, protective law which guarantees recognition to years of competent service. The Legislature has clearly favored the latter benefit. A reversal here of so many years of well-understood past precedent would, in my view, create precisely the sort of uncertainty and instability the tenure laws were designed to avoid (cf. Matter of Palmer v Merges, 37 NY2d 177, 181).
Even if it is clearly established that the total number of years spent in the district shall be counted toward the seniority of each individual employee, we are still left with the question of how to define the "tenure of the position abolished”, that is, the group within which system-wide seniority determines the order of layoffs.
Both in the cases before us and in Matter of Blum v Board of Educ. (39 NY2d 984), decided herewith, the board also asserted that tenure area is synonymous with the area covered by the license under which each employee, counselor or teacher, works. Were that the case, then counselors whose services are discontinued would not have the right to be returned to the classroom, for counseling takes place under a different license than does teaching.
Moreover, a definition of tenure area as limited to that of the particular license would have even more far-reaching effects. In the Blum case, for example, the petitioner, a senior high teacher of social studies who formerly taught that same subject at the junior high level, has been discontinued on the ground that he is least senior within social studies teachers at the senior high level, rather than having his seniority calcu *471 lated as against that of all senior high teachers,[2] for, at the secondary levels, licenses are issued by subject matter specialty. Indeed, in view of the broad sweep of the board’s contention, it is surprising to me that the majority does not choose to confront squarely the legal issues involved in this question either in the present case or in its memorandum in Blum. Given the serious implications which the board’s position here has for every single educator who works for it, I believe greater consideration of the licensing issue is more than warranted.
Such an analysis must begin with the fact that "tenure areas” have never been well defined. At the time subdivision 3 of section 2585 was enacted, school systems were divided into two basic areas, elementary education and secondary education. Neither kindergartens nor junior high schools, for example, then existed. In addition to those two basic areas circumscribed by grade levels—so-called "horizontal” tenure areas— there also existed a few special exceptions, notably certain administrative positions and special subjects such as art or music (see Matter of Ducey, 65 NY St Dept Rep 65, supra), which were considered separate tenure areas within the grade level—so-called "vertical” tenure areas.
As school systems have expanded, adding stratifications at grade level and additional fields of specialization among teachers and other support personnel, such as counselors, there has developed a concomitant tendency to refine and recast the tenure areas in keeping with that growth (see Matter of Becker v Board of Educ., 9 NY2d 111 [kindergarten]; Matter of Jadick v Board of Educ., 15 NY2d 652 [junior high]; Matter of Van Heusen v Board of Educ., 26 AD2d 721 [study hall supervision]; Matter of Silver v Board of Educ., 46 AD2d 427 [high school social studies]; Matter of Amos v Union Free School Dist. No. 9, 47 AD2d 711 [high school French]; Matter of Mitchell v Board of Educ., 48 AD2d 835 [driver education]). As a perusal of the cases will indicate, on the whole, bifurcations of grade level or horizontal tenure areas have been upheld, while attempts on the part of school boards to define *472 narrower vertical tenure areas within grade level have been discouraged. In explanation of the policy behind such a limitation upon the power of school boards to define new tenure areas, we recently stated: "Random experimentation with tenure areas by local school districts, subject only to ad hoc, retrospective approval by the Commissioner of Education, was never contemplated by the tenure statutes protecting teachers’ positions in the State’s public school system (see Education Law, §§ 3012, 3013). Were that the case, the legislative purpose to attract qualified persons to teaching and to provide job protection to teachers who have given years of satisfactory service would be thwarted. This is not to say that the concept of 'tenure areas’, recognized by this court in Matter of Becker v. Board of Educ. (9 N Y 2d 111), is not an expandable one, or that it could not encompass the 'vertical’ subject matter classifications employed by the Massapequa Board of Education. Instead, any further broadening of the tenure area concept must be effected only by prospective rule-making by the Board of Regents incorporating proper standards, pursuant to section 207 of the Education Law, or by the Legislature itself.” (Matter of Baer v Nyquist, 34 NY2d 291, 295.)
Under section 207 of the Education Law, the Board of Regents may empower the Commissioner of Education to promulgate rules and regulations governing school systems in the State, so long as it also provides the standards by which the commissioner is to act. As the Baer case makes clear, the commissioner’s actions must be prospective, not only in terms of notice to the personnel affected but also in terms of their effect on rights already vested.
Despite the courts’ repeated disapproval of attempts by school boards to place ad hoc limitations upon the concept of tenure area as grade-level wide by redefining these areas as coterminous with subject matter specialties, the board contends that it may so define tenure areas because it is empowered, under section 2569 of the Education Law, to create its own board of examiners and to set its own standards for licensing counselors, teachers, and other special services personnel in lieu of the certification areas and qualifications set by the Board of Regents for the rest of the State. In brief, the board interprets the licensing exception as an authorization to redefine tenure areas as coterminous with license areas.
I do not find that persuasive on the question of tenure areas of counselors or, for that matter, of teachers, for the purpose *473 of determining seniority. The board’s licensing procedures are exact analogues of State certification procedures; both have as their goal the definition of who is qualified to be hired, not how seniority is to be assessed. That view is supported by our dispositive holding in Matter of Lynch v Nyquist (34 NY2d 588, affg 41 AD2d 363 [Cooke, J.]), that certification was not to be used to circumvent the seniority requirements set forth in section 2510 of the Education Law (§ 2510 is the exact duplicate of § 2585 save that it applies to cities with populations under 125,000).
The facts in Lynch are helpful; there a teacher certified in Latin had for some time also taught English and history. When Latin was deleted from the curriculum, the school board tried to discontinue the petitioner on the ground that she was certified only in Latin and was not therefore qualified to teach other subjects. The Lynch decision held that her lack of certification in other subjects did not constitute grounds on which to discontinue the teacher’s services when she was senior to teachers in those other subjects, pointing out that a contrary view would permit unlimited abuse by school districts of the protections which the tenure laws were designed to afford.
Procedures do exist for terminating the services of a teacher or counselor not qualified to teach in any position other than the one abolished; they provide for a hearing to determine whether in fact the employee is not qualified to fill any such position (see Education Law, §§ 3012, 3020-a). Moreover, the same law which permits New York City to license its own employees also permits the board to place them in positions for which they are qualified but not licensed (Education Law, § 2573, subd 11); indeed, according to the briefs on the appeals before us, the board has only recently given such a qualifying examination for some of its personnel pursuant to that statute (see, also, Matter of Formica, 11 Ed Dept Rep 162; Matter of Rodgers, 13 Ed Dept Rep 238). Consequently, there is no need to limit the tenure area to that of the license in order to preserve the quality of education in the city schools.
Even if it were the case that defining the tenure area as the entire grade level rather than just the license area would limit the board’s flexibility in personnel assignment, that argument has already been considered and rejected by the Legislature. In almost exactly the same terms as it is made to us, that argument was submitted to the Legislature by the *474 city and rejected when the tenure laws were passed (see Memorandum of New York City Board of Education, Bill Jacket Collection, L 1940, ch 754, p 3; Memorandum of Mayor of City of New York, Bill Jacket Collection, L 1940, ch 754, p 12). And so, even if we would otherwise have arrived at a contrary view, I believe we are required to support that manifestation of legislative intent.
In short, nothing in the special legislation authorizing the board to create its own licensing procedures can be read to authorize it expressly to create new tenure areas as well. If anything, the legislative history of the tenure laws suggests the opposite. On the basis of the requirement, noted in the Baer case, that such power be given only to the commissioner, that it be accompanied by specific standards for its use and that it be used only prospectively, I cannot find any authorization for the board’s decision to make tenure area coterminous with license on a wholesale, city-wide basis.[3]
That is not to say, however, that the commissioner could not have declared counseling to be a special vertical exception pursuant to such authorization. In fact, as an alternative to its more sweeping assertion of power to define tenure area as synonymous with license, the board contends here that the commissioner did so define counseling as a special exception and as a tenure area of its own many years ago and with sufficient clarity to meet the requirement of prospectivity even with respect to the currently employed counseling staff. That assertion seems eminently correct. And since the majority’s opinion, insofar as it is directed to this historically verifiable exception for counselors, sets forth accurately and amply the evidence which supports such a conclusion, I do concur in its holding that counselors who are discontinued need not be returned to the classroom.[4]
*475 However, for the reasons stated, I find it necessary to register a dissent from the calculation of seniority on the basis of time spent in the current tenure area rather than on the basis of time spent in the employ of the school district as a whole.
Accordingly, I would reverse so much of the Appellate Division’s order as held that guidance is not a separate tenure area and that counselors had insufficient notice that it was so considered, but I would sustain the petition to the extent of requiring the reformulation of seniority lists within the counseling tenure area to reflect system-wide seniority.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Cooke concur with Judge Jasen; Judge Fuchsberg concurs in part and dissents in part and votes to modify in a separate opinion.
In Steele v Board of Educ., Matter of Fisher v Board of Educ. and Matter of Marino v Board of Educ.: Order reversed, without costs, and petition dismissed. Question certified answered in the negative.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Cooke concur with Judge Jasen; Judge Fuchsberg concurs in part and dissents in part and votes to modify by granting petition in part in a separate opinion.
In Matter of Gerstein v Board of Educ.: Order modified, without costs, and petition dismissed in accordance with the opinion herein, and, as so modified, affirmed. Question certified answered in the negative.

. While subdivision 3 of section 2585 of the Education Law, which is the statute directly in issue here, applies only to school systems in our larger cities (see Education Law, § 2550), its exact analogue, section 2510, applies the same language to smaller cities as well (see Education Law, § 2501).

. The petitioners in the Blum case accept the fact that junior and senior high school are different tenure areas and that, therefore, a teacher discontinued from one such area has no right to a position in the other. They ask only that their years in the former tenure area be counted toward seniority in the new one and that the senior high tenure area be defined as inclusive of all who teach core curriculum subjects.

. The city also suggests that teachers have themselves accepted the concept of tenure areas .as coterminous with licensing because, in their collective bargaining contract with the city, they agreed that "excessing” should take place on the basis of licensing. "Excessing”, a procedure whereby available, vacant positions in other schools are assigned to teachers whose positions in a particular school are abolished, involves no layoffs and hence runs afoul of no statutory provisions for tenure. It is wholly a creature of contract and as such may be defined by the parties in any way they wish. Parties to a contract, however, have no power to alter vested statutory rights (see Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist, 38 NY2d 137).

. I also concur in the majority’s decision to sustain so much of the order of the Appellate Division in the Gerstein case as affirmed the trial court’s dismissal of thfe petition to mandate guidance services at the elementary level.