In the Matter of MARY E. McNAMARA et al., Appellants, v
BOARD OF EDUCATION OF CITY SCHOOL DISTRICT OF CITY OF
ROCHESTER, Respondent.

Fourth Department, December 10, 1976

*Bernard F. Ashe (Ivor Moskowitz* of counsel), for appellants.

*Adam D. Kaufman* for respondent.

GOLDMAN, J. Petitioners-appellants, McNamara and O'Connor, brought this article 78 proceeding in which they seek reinstatement as teachers by the respondent Board of Education of the Rochester School District. Special Term dismissed their petition on the merits without a hearing.

The petition alleges, *inter alia,* that petitioners were duly licensed elementary school teachers who had taught pre-kindergarten classes in the respondent board's school district, that "teachers of pre-kindergarten classes are included in the elementary tenure area", that "both petitioners are more senior in their tenure area than at least two other teachers in respondent Board's City School District", and that when petitioners' positions were abolished the board terminated their employment in violation of section 2510 of the Education Law.[1] Petitioners prayed that the respondent be ordered to determine their seniority by comparison with all other teach-

---

1. Subdivision 3 of section 2585 of the Education Law, and not subdivision 2 of section 2510 applies to the City School District of Rochester (see Education Law, § 2550), but the two subdivisions are identically worded.

ers in the elementary tenure area, and, if two less senior teachers be found, that respondent be required to reinstate petitioners with full back pay, benefits and privileges. Respondent's answer denied that pre-kindergarten teachers were included in the elementary tenure area and alleged, *inter alia,* that the termination of petitioners complied with Education Law (§ 2585) and the applicable collective bargaining agreement.

Special Term's judgment dismissing the petition recites three grounds: (1) that petitioners, as pre-kindergarten teachers, were "within a separate and distinct horizontal tenure area apart from the kindergarten tenure area and/or the elementary tenure area"; (2) that necessary parties were not joined; and (3) that the petition was insufficient in "failing to allege with specificity those teachers who petitioners deem to have less seniority than petitioners themselves". Appellants controvert all three grounds.

Petitioner Virginia O'Connor was first appointed by the respondent board in April, 1966 to a half-time position as a teacher in the Family Nursery School Project, a Federally funded program administered by the respondent's school district under Title I of the Elementary and Secondary Education Act. She was reappointed in each succeeding year through the 1974-1975 school year, sometimes on a part-time and sometimes on a full-time basis. She received permanent certification in September, 1970.

Petitioner Mary McNamara received her first appointment as a substitute teacher in the Family Nursery School Project in August, 1966. She too was reappointed in succeeding years through the 1974-1975 school year, although she did not teach in the 1970-1971 school year. She received permanent certification in September, 1973.

Both petitioners' appointments were expressly declared to be "pending continuation of project and approval of necessary funds", and both petitioners signed contract letters bearing notations to that effect. Petitioners were apprised by letters from respondent's school district that five consecutive years of satisfactory service would render them eligible for tenure upon resolution of the board, but the letters do not specify the area of that tenure. Petitioners assert, while respondent denies, that they are tenured. On July 1, 1975 the respondent's district sent a letter to each petitioner advising her that her position in the Family Nursery School Program (known by

then as the "Early Childhood Readiness Center Program") would be abolished due to a reduction of Federal funding, and that she would be placed on a preferred eligible list for appointment to the next vacancy in her tenure area. Each letter contained this paragraph: "Seniority in this tenure area and not the source of funding for a specific position is the basis for determining staff reductions. Your employment in this position is being terminated on the basis of your having least seniority in terms of years of continuous service in the City School District as a pre-school teacher."

Each petitioner was advised later in July that the board had failed to act on her termination, but the board did act on August 7, 1975 to terminate petitioners' positions, and petitioners were so advised by letters dated August 8, 1975. Letters later in August informed petitioners that their salaries would be paid through September 7, 1975, "in accordance with the 30-day notification requirement". The board's resolution terminating petitioners' employment recited that the terminations were "pursuant to Education Law, § 2585 and Appendix 'B' of the collective bargaining agreement by and between City School District and the Rochester Teachers Association". Appendix "B" of that agreement merely implements the scheme of section 2585 of the Education Law whereby those with the least seniority in the tenure area of an abolished position are terminated first. However, nothing in Appendix "B" sheds any light on the question whether pre-kindergarten teachers occupy a separate tenure area. Respondent asserts that both petitioners have been appointed to probationary assignments as elementary teachers for the 1976-1977 school year.

The principal substantive question on this appeal is whether petitioners were discontinued in violation of subdivison 3 of section 2585 of the Education Law. That subdivision provides: "3. Whenever a board of education abolishes a position under this chapter, the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued." The phrase, "within the tenure of the position abolished", in the quoted subdivision as well as in its companion provision (Education Law, § 2510, subd 2) "has a specific and technical meaning" (*Matter of Lezette v Board of Educ.,* 35 NY2d 272, 281). " 'It is axiomatic' ", as the Commissioner of Education has stated, " 'that tenure adheres to a particular area of instruction and

encompasses all subjects within such area. "Area tenure" is descriptive of tenure at certain grade levels, such as elementary, secondary and kindergarten levels, and also of certain specified subjects, including physical education, music, art and vocational subjects. Apart from these specified subjects, tenure is not granted on the basis of course subjects but is only descriptive of grade level *(Matter of Van Heusen v Board of Education* [26 AD2d 721]; *Matter of Becker v Board of Education* [9 NY2d 111])' " *(Matter of Baer v Nyquist,* 34 NY2d 291, 296, n 1, quoting *Matter of Fitzgibbons,* 8 Ed Dept Rep 205, 206-207). While the boundaries of the traditional "areas" of tenure are not necessarily immutable, the Court of Appeals has made clear that "[r]adical restructuring of tenure areas, compatible with the purpose of the tenure statutes, should not be free of controlling regulations or express standards propounded by the Board of Regents or enacted by the Legislature", which should be "prospective in effect" *(Matter of Baer v Nyquist, supra,* p 294). The reason is that if boards of education were allowed to manipulate the scope of tenure areas on an ad hoc basis, their power to do so "could * * * become an instrument of retrenchment * * * enabling them to subvert the purpose of the tenure statutes". This could be done, for example, by shifting probationary teachers "among comparable positions for the cynical purpose of exploiting their services while denying them tenure", or by narrowing the coverage of a teacher's tenure by "changing 'social studies' to 'civics'", or "by tenuring foreign language teachers in one language only" *(id.,* p 297). Hence, absent legislative action or prospective rule making by the Board of Regents, the settled, traditional boundaries of tenure areas must be deemed fixed.

Petitioners maintain that "pre-kindergarten has historically been recognized as part of the kindergarten tenure area", while respondent just as stoutly maintains that "[t]raditionally within the City School District, nursery-pre-kindergarten has been treated separate and apart from kindergarten and elementary". However, the parties cite no reported decision regarding the status of pre-kindergarten teachers with respect to tenure areas, and we have found none. Nor does either party adduce any significant evidence of historical custom. Contrary to respondent's claim, petitioners' employment records do not "clearly indicate" that family nursery school teachers were treated as being in a separate tenure area. Petitioners' appointment notices do not state what tenure

area encompassed their appointments, and the recitations that the appointments were contingent upon approval of funds have no relevance to the question of tenure areas. The initial termination letters expressly disavowed any notion that petitioners' terminations were in any way related to the source of funds used to pay them. The termination notices state unequivocally that "[Y]our employment in this position is being terminated on the basis of *your having least seniority* (emphasis supplied) in terms of years of continuous service in the City School District as a pre-school teacher". Moreover, the Commissioner of Education has consistently taken the position that the source of funding of a teacher's employment has no bearing on her right to the protection of the tenure statutes *(Matter of Durr,* 15 Ed Dept Rep 442; *Matter of Haj,* 14 ED Dept Rep., 111, 112; *Matter of McPhillips,* 13 Ed Dept Rep 95, 97).

Both parties note the enactment of chapter 98 of the Laws of 1975 (eff May 13, 1975), which added section 3012-a to the Education Law. This section provides: "§ 3012-a. Elementary tenure area. Notwithstanding any other provision of law to the contrary, and except in cities having a population of one million or more, elementary tenure area shall mean kindergarten through grade six for teachers employed in such grade levels after the effective date of this section. All teachers holding tenure as of the effective date of this section in the kindergarten tenure area or grades one through six tenure area shall be deemed to hold tenure in the elementary tenure area as defined by this section." The aim of the section was to overturn a series of rulings by the Commissioner of Education that the kindergarten tenure area was separate from the elementary tenure area (see *Matter of Morse,* 14 Ed Dept Rep 267, 269 and decisions there cited). A sponsoring memorandum explained the provision in these terms: "The purpose of this bill is to correct another exception to this general rule of tenure areas based on grade level. The Commissioner of Education has determined administratively that kindergarten be a separate tenure area. Such an administrative determination is completely contrary to the concept of tenure based on grade level. It is an established fact that, for administrative purposes, kindergarten is part of the elementary school. This bill recognizes this fact by defining elementary tenure area as kindergarten through grade six. In addition, the educational requirements for certification as a kindergarten teacher are

substantially identical to those for certification of teachers in grades 1-6. The enactment of this bill is consistent with the courts' formal recognition of area tenure predicated on grade level on a statewide basis regardless of the size of the particular school districts involved." (Memorandum of Senator E. Giuffreda, NY Legis Ann, 1975, pp 159, 160.)

The parties draw differing conclusions on the basis of section 3012-a of the Education Law. Respondent, noting in passing that section 2555 of the Education Law distinguishes between kindergarten and nursery school for purpose of fixing the ages of children who may attend, argues that the absence of any mention of "pre-kindergarten" in section 3012-a evinces a legislative intent to exclude "pre-kindergarten" from the elementary tenure area. This argument, while it may be entitled to some weight, does not seem compelling. It seems equally likely that the Legislature simply intended to make no pronouncement as to the status of pre-kindergarten teachers.

Respondent next argues that the retroactive provisions of section 3012-a of the Education Law violate the mandate of *Matter of Baer v Nyquist* (34 NY2d 291, 294, *supra)* that restructuring of tenure areas should be prospective. The Legislature, however, was not bound to follow the *Baer* rule unless it rested upon constitutional grounds, which it did not.

Respondent's answer does raise the argument that the retroactive provisions of section 3012-a, if applied to include these petitioners in the "elementary" tenure area, would violate clause 1 of section 10 of article I of the United States Constitution, which provides in part that: "No state shall * * * pass any * * * law impairing the obligation of contracts". First, in light of respondent's failure to treat this argument in its brief or cite any authorities, it could be concluded that the argument has been abandoned. Second, it seems questionable whether respondent is aggrieved by the operation of the statute so as to have standing to raise the constitutional challenge (cf. *Peverill v Board of Supervisors,* 201 Iowa 1050, 1058). In any event, we think the impairment-of-contract argument lacks merit (cf. *Dodge v Board of Educ.,* 302 US 74; *Phelps v Board of Educ.,* 300 US 319; but, see, *Indiana ex rel. Anderson v Brand,* 303 US 95, which held that rights of permanent teachers under 1927 act were contractual, and obligation of contract was unconstitutionally impaired by 1933 act).

Petitioners urge that section 3012-a of the Education Law should be read to include them in the elementary area.[2] Because the kindergarten tenure area—which, they say, has traditionally included pre-kindergarten teachers—is now included in the elementary tenure area, petitioners conclude that pre-kindergarten teachers are included as well. They note that new rules of the Board of Regents, which became effective some two and one-half months after the effective date of section 3012-a of the Education Law contain a provision that "Kindergarten *(including pre-kindergarten programs)* together with the first six grades shall constitute the elementary tenure area" (8 NYCRR 30.4 [eff Aug. 1, 1975] [emphasis supplied]). However, the rule only applies to appointments made on or after August 1, 1975 (8 NYCRR 30.2 [a]), and thus appears not applicable to these petitioners. Moreover, it is not clear whether the rule's inclusion of pre-kindergarten along with kindergarten marks a codification of prior practice or a departure therefrom. Certainly the rule changes past practice insofar as it includes kindergarten in the same tenure area with grades 1 through 6 (see *Matter of Morse,* 14 Ed Dept Rep 267, 269, *supra).*

Petitioners also note that 8 NYCRR 80.15 (as amd Feb. 28, 1974) prescribes the same certification requirements for teaching at all levels from nursery school, or "early childhood", through sixth grade. This impresses us but this argument falls short of conclusiveness because there are areas where the scope of certification does not correspond precisely with the scope of tenure. For example, 8 NYCRR 80.15 was effective when *Matter of Morse (supra)* was decided, and yet the commissioner held that kindergarten teachers and elementary teachers were in separate tenure areas.

In summary, no argument put forward by either party seems truly dispositive of the question whether these petitioners are within the elementary tenure area, and the record is utterly barren of any evidence of historical custom or practice which would shed light on the question. In view of the absence of reported decisions, it seems probable that the question has simply never risen before. Moreover, for the sake of maintain-

---

2. Although there is a dispute as to whether these petitioners hold tenure, the commissioner has taken the position that "the retroactive provisions [of section 3012-a] must be read to apply to teachers serving probationary periods as well as to teachers on tenure" (formal opn of counsel No. 232, 14 Ed Dept Rep 435, 436). The reasoning of the cited opinion seems sound.

ing clarity in the "tenure area" concept, it seems desirable to treat the issue here as legal rather than factual.

In the absence of any compelling authority on either side of the question, we hold that pre-kindergarten teachers are included in the elementary tenure area even if they were appointed prior to August 1, 1975. Such a rule would have the advantage of uniformity, and it would protect teacher seniority rights while not having the effect of allowing wholly unqualified teachers to "bump" qualified teachers. 8 NYCRR 80.15 assures that a pre-kindergarten teacher will have at least the academic training necessary to teach older children. Finally, although 8 NYCRR 30.4 operates prospectively, the promulgation of that rule seems very strong evidence that the inclusion of pre-kindergarten teachers in the elementary tenure area would not be viewed as unduly disruptive by those who bear the primary responsibility for administering the educational system.

Accordingly, we conclude that the dismissal of the petition herein was error insofar as it was on the merits. It remains to consider whether dismissal was proper for nonjoinder or for failure to name the allegedly less senior teachers.

CPLR 1001 (subd [a]) provides in part that: "Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants."

In *Matter of Skliar v Board of Educ.* (45 AD2d 1012) and *Matter of Dreyfuss v Board of Educ.* (42 AD2d 845), where teachers sought reinstatement, alleging that they were terminated ahead of less senior teachers, joinder of the allegedly less senior teachers was held to be compulsory. However, in *Matter of Lezette v Board of Educ.* (35 NY2d 272, 282-283, supra), the Court of Appeals distinguished *Skliar* and *Dreyfuss* and found it unnecessary to reach the nonjoinder issue. *Lezette* involved a probationary teacher whose position was abolished but whose services were never formally terminated. The court held that she had seniority rights over newly appointed teachers. In distinguishing *Skliar* and *Dreyfuss,* the court stated (pp 282-283): "Therein, questions of fact were presented as to the relative seniority status of the respective teacher who was hired in lieu of the petitioner. Here, the status of the [newly appointed] teachers is postulated."

In the present case, as in *Skliar* and *Dreyfuss,* it is neces-

sary to determine whether petitioners are the least senior teachers in their tenure area. But here, unlike *Skliar* and *Dreyfuss,* the board's action terminating petitioners was predicated upon a mistaken belief as to which tenure area they occupied. We agree with petitioners' conclusion that the joinder of allegedly less senior teachers would be premature, because the board has never yet had an opportunity to determine petitioners' relative seniority based upon a comparison with teachers in the same tenure area. The orderly way to proceed is to have the seniority determination made initially by the board. Once the board has identified the teachers whom it deems least senior in the elementary tenure area, those teacher may, if so advised, seek judicial review and join the teachers whom they seek to oust from their positions. If joinder at this point involved merely discovery of a roster of teachers and a comparison of their appointment dates, then perhaps it would be appropriate to require petitioners to make discovery and determine who should be joined. However, Appendix "B" of the collective bargaining agreement sets forth standards for determining seniority that can become complicated, especially where teachers with identical lengths of service are involved or where, as here, part-time teaching and leaves of absence are involved in the determination. This makes it desirable that the initial determination be made by the board.

The judgment should be reversed and the matter remitted to the respondent board to determine petitioners' seniority by a comparison with all teachers in the elementary tenure area. Should it then appear that petitioners were not the least senior teachers in that tenure area, they should be reinstated with back pay, benefits and privileges from September 7, 1975, less any earnings they may have had from other employment while terminated, exclusive of summer work *(Matter of Lezette v Board of Educ.,* 35 NY2d 272, 283, *supra).*

MARSH, P. J., MOULE, MAHONEY and WITMER, JJ., concur.

Judgment unanimously reversed, on the law with costs, and matter remitted to Board of Education, City School District, City of Rochester for proceedings in accordance with opinion by GOLDMAN, J.