Chief Judge Breitel.
The Commissioner of Education appeals in an article 78 proceeding brought by a junior high *294 school teacher to obtain recognition of his tenure. Special Term and the Appellate Division had determined the proceeding in the teacher’s favor. The principal issue is whether local school districts may limit, in their discretion, the teaching areas in which they grant tenure, without, defined standards, subject only to the ad hoc approval of the commissioner.
The order of the Appellate Division should be affirmed. While tenure limited to curricular classifications might permitted under the tenure statutes, they may not be imposed by local school boards subject only to retrospective approval by the Commissioner of Education. Until recently only grade-level tenure areas, and special subject tenure areas, such as music and physical education, have been used and received judicial recognition. Radical restructuring of tenure areas, compatible with the purpose of the tenure statutes, should not be free of controlling regulations or express standards propounded by the Board of Regents or enacted by the Legislature. Most important, they should be prospective in effect.
On September 1, 1967, Thomas Baer was employed to teach general science at the junior high school level by the Board of Education of Union Free School District No. 23 of the Town of Oyster Bay, Nassau County, better known as the Massapequa School District. Less than a year later, in a letter of May 20, 1968, to the assistant superintendent of schools, Baer requested a change in assignment from science to social studies, noting that he was enrolled in a program leading to certification in social studies and to a masters degree in history. His request was granted, and he began teaching social studies in the 1968-1969 school year.
The school principal orally warned Baer that the change in departmental assignment made him subject to a new three-year probationary period. Since 1956, Massapequa had informally organized its teaching staff at the high school and junior high school levels by a vertical division into departments reflecting subjects in the traditional curricula, that is, English, social studies, science, mathematics, and foreign languages. The Board of Education’s minutes indicate that tenure appointments were made on this departmental vertical basis, although it is not clear that probationary appointments were similarly categorized, or that probationary teachers were limited in their *295 teaching assignments. The alleged change in petitioner’s probationary status was not, in any event, reflected in the board’s minutes, by resolution or otherwise. Petitioner’s annual notices of salary, however, indicated that the date of his probationary appointment had been moved up from September 1, 1967 to September 1,1968.
In March, 1971 Baer was notified by the board that he was discharged,, without hearing, effective June 30,1971. Asserting that he had served his three-year probationary period between September, 1967 and June, 1970, and that the board was thereby estopped to deny him tenure, petitioner appealed to the Commissioner of Education. The commissioner dismissed Baer’s appeal, ruling that the Massapequa board was empowered to create such tenure areas as suited the needs of its school system.
Random experimentation with tenure areas by local school districts, subject only to ad hoc, retrospective approval by the Commissioner of Education, was never contemplated by the tenure statutes protecting teachers’ positions in the State’s public school system (see Education Law, §§ 3012, 3013). Were that the case, the legislative purpose to attract qualified persons to teaching and to provide job protection to teachers who have given years of satisfactory service would be thwarted. This is not to say that the concept of “ tenure areas ”, recognized by this court in Matter of Becker v. Board of Educ. (9 N Y 2d 111), is not an expandible one, or that it could not encompass the “ vertical ” subject matter classifications employed by the Massapequa Board of Education. Instead, any further broadening of the tenure area concept must be effected only by prospective rule-making by the Board of Regents incorporating proper standards, pursuant to section 207 of the Education Law, or by the Legislature itself.
Matter of Becker (supra) is not to the contrary. At the time of that ruling, in 1961, “ horizontal ” grade-level tenure areas had been recognized administratively, through Education Department directives and the commissioner’s rulings, for nearly a decade. In affirming the commissioner’s determination, this court emphasized this long-time administrative construction, and the probability that a contrary holding at that late date would “ produce State-wide chaos ” (9 N Y 2d, at p. 118). It is notable, moreover, that neither since Becker nor the cases *296 in its wake has the Legislature amended the statute to preclude horizontal tenure areas, or to alter the judicial interpretation then or later applied to the tenure statutes.
In recognizing in Becker the prior administrative gloss on the tenure statutes, this court did not imply, let alone hold, that school districts have a free hand in varying tenure areas, with the Commissioner of Education the final arbiter of their handiwork. Indeed, neither legislative history nor judicial precedent support the commissioner’s portentous conclusion, in an unreviewed administrative ruling of 1969, that “ Tenure areas are created by administrative action at the school district level rather than by formal action of either the Commissioner of Education or the courts. Each of the latter in effect recognizes the legal consequence of the action taken by the former ” (Matter of Fitzgibbons, 8 Ed. Dept. Rep. 205, 206).
In contrast to Becker, where horizontal tenure areas had been consistently recognized for so long a time, petitioner Baer’s case is apparently the first instance where the commissioner recognized vertical tenure areas in the traditional curricula. The commissioner in effect requires a teacher to suffer a forfeiture where the teacher’s probationary period began when, by the commissioner’s own concession, tenure areas had been expressed by the department as traditional only in horizontal terms (see Matter of Fitzgibbons, 8 Ed. Dept. Rep. 205, 206-207).[1] Indeed, while Becker did not suggest that this contiept of area tenure was immutable some lower courts assumed, quite understandably, that this concept was, at least pending change by legislation, static (see, e.g., Matter of Van Heusen v. Board of Educ., 26 A D 2d 721).
Petitioner Baer therefore would have had substantial grounds to believe that probationary requirements posited on vertical tenure areas would be legally unenforceable against him. *297 Moreover, the school system’s lack of formality in warning petitioner militates against a finding of waiver by petitioner, and illustrates the dangers inherent in ad hoc, decentralized tenure experimentation. The Massapequa Board of Education never adopted vertical tenure areas by formal resolution. Bather, the existence of such a system was inferrable only from the fact that the various resolutions granting tenure described the appointments by subject matter. On the other hand, the board’s minutes do not indicate a comparable classification in the probationary appointments, nor do they reflect the alleged change in Baer’s probationary status when he changed from general science to social studies. The warning from the principal of petitioner’s school was oral and informal. The notices of annual salary signed by petitioner did indicate the dates of probationary appointment, but this was peripheral to their main purpose, and in this case they were not always accurate.
Inadequate notice to the probationary teachers, and the retrospective validation of new schemes by the commissioner, are two of the problems inherent in a decentralized, district-level formulation of tenure areas that is open-ended and devoid of standards.
Vertical tenure areas of unlimited variation could, moreover, become an instrument of retrenchment in the hands of school boards facing demographic and fiscal crises, enabling them to subvert the purpose of the tenure statutes. The more highly-refined the tenure areas, the more likely that probationary teachers may be shifted among comparable positions for the cynical purpose of exploiting their services while denying them tenure. (See, generally, Lanzarone, Teacher Tenure — Some Proposals For Change, 42 Fordham L. Rev. 526, 544-547, for a discussion of the incentives to manipulate teacher tenure.)
But the danger is not limited to probationary teachers. Under subdivision 2 of section 2510 of the Education Law, for example, a board of education abolishing a position must discharge the tenured teacher “ having the least seniority in the system within the tenure of the position abolished ”. With vertical tenure areas, a fiscal retrenchment could be implemented by changing “ social studies ” to “ civics ”, by tenuring foreign language teachers in one language only (cf. Matter of Lynch v. Nyquist, 41 A D 2d 363, affd. 34 N Y 2d, 588). Thus, the system proposed *298 would not only undermine the rights of teachers working toward tenure, but also of those who have secured tenure.
The administrative discretion of the commissioner is concededly very broad. Section 310 of the Education Law authorizes the commissioner to entertain appeals by parties aggrieved by actions of school officials, and deems his determination of these appeals “ final and conclusive, and not subject to question or review in any place or court whatever ” (see Bullock v. Cooley, 225 N. Y. 566, 576, 577). However, this provision has been qualified to permit the courts to overturn the commissioner’s decisions where they are “ purely arbitrary ” (see Matter of Board of Educ. of City of N. Y. v. Nyquist, 31 N Y 2d 468, 473, n. 2, and cases cited).[2] And the commissioner’s decisions have been held arbitrary where they contravene statutes or constitutional provisions, or countenance their contravention (see at p. 473; Matter of Ross v. Wilson, 308 N. Y. 605, 617; Matter of Ellis v. Allen, 4 A D 2d 343, 345, app. dsmd. 4 N Y 2d 693). To the extent then that décentralized formulation of tenure areas, free of controlling propounded standards, undermines, as suggested, the purposes of the tenure statutes, the unruly practice is beyond the commissioner’s power to ratify.
Beyond these legal and factual considerations there is an overriding principle. If the tenure statutes are to be interpreted as broadly as the commissioner urges, they are grants of power, almost arbitrary and unlimited. That the law does not permit and it has been so held with respect to the department’s powers of supervision and regulation (Packer Collegiate Inst. v. University of State of N. Y., 298 N. Y. 184). There must be standards to guide a discretion as broad as that claimed by the commissioner, and those standards may be provided by regulation or by statute, if the tenure statutes are to be valid as they may be, if properly interpreted (298 N. Y., at pp. 188-190, 192).
Again, this does not mean that vertical tenure areas are necessarily unwise policy or are precluded by statute, only that they must be carefully implemented prospectively by the Board of *299 Regents or the Legislature. Prospective rule-making is intrinsically less dangerous than the ad hoc adjudication proposed by the commissioner (see 1 Davis, Administrative Law Treatise, § 2.11, p. 122). Since the Legislature vested the Board of Regents with prospective rule-making power under section 207 of the Education Law, the tenure statutes should not be read to countenance a system which will, as has been suggested, undermine their purpose.
Before concluding, it is appropriate to note that petitioner Baer’s position is arguably weak from the viewpoint of his personal conduct. He did request a change of teaching subjects before acquiring tenure in his first position; he did acknowledge that he would be on initial “ probation ” in his new teaching assignment; and he therefore gambled on being recommended and accepted for tenure in his newer teaching assignment. It is not wise, however, in dealing with a personnel system to have too much confidence in the ‘ ‘ choices ’ ’ made by a school teacher who must seek and receive accommodations from his superiors. Otherwise, doctrines of waiver and estoppel could be used facilely to avoid ever giving tenure. The tenure statutes are intended to protect the teacher and not become a trap to those not guileful enough to avoid it. What happened to the teacher in the Becker case {supra) is illustrative, dramatically, of how a tenure system could be manipulated to deny tenure to one who had taught for many years (9NY 2d, at p. 116).
Moreover, the tenure structure is not necessarily protective only of the teacher. If the tenure area is narrowly defined, the teacher might be entitled tó refuse to teach outside the defined area (see Matter of Van Heusen v. Board of Educ., 26 A D 2d 721, supra).
Accordingly, the order, of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Rabin and Stevens concur.
Order affirmed.

. “It is axiomatic that tenure adheres to a particular area of instruction and encompasses all subjects within such area. ‘Area tenure’ is descriptive of tenure at certain grade levels, such as elementary, secondary and kindergarten levels, and also of certain specified subjects, including physical education, music, art and vocational subjects. Apart from these specified subjects, tenure is not granted on the basis of course subjects but is only descriptive of grade level (Matter of Van Heusen v. Board of Education; Matter of Becker v. Board of Education [citations omitted]) ”.

. Despite the suggestion in section 310 that judicial review is proscribed, the judiciary retains the power and the duty to make certain that administrative officials do not act in excess of the authority delegated by statute, or in disregard of the Legislature’s prescribed standard (Matter of Guardian Life Ins. Co. v. Bohlinger, 308 N. Y. 174, 183, affg. 284 App. Div. 110, 113-115).