Jasen, J.
In these four appeals, most of the 27 named
petitioners are elementary school guidance counselors who *461 were discharged from employment by the Board of Education of the City of New York prior to the commencement of the 1975-1976 school year. Each of them sought an order directing the board, inter alia, to revise its seniority formula and to reinstate them with back pay. In each proceeding the Supreme Court, Kings County, ordered that the board establish a new tenure list and make appropriate adjustments with respect to each petitioner. The Appellate Division, Second Department, affirmed the order and judgment in each case and granted leave to appeal on certified questions. For the reasons which follow, we disagree with these determinations and would dismiss the petitions.
In early August, 1975, the city board of education was informed that due to New York City’s precarious financial position the board’s proposed budget for the 1975-1976 school year would be reduced approximately $230 million. The board estimated that this would result in a 17% overall reduction in the educational staff. Thereafter the board allocated the existing funds to the Chancellor of the city school district and to the boards of education of the community school districts. In late August, 1975, the city board was advised by the community boards and the Chancellor that as part of massive staff, program and service reductions approximately 409 guidance counselors would have to be laid off.[1] Upon receipt of this information, the division of personnel of the city board established a city-wide excess list and began the process of placing the most senior guidance counselors in the remaining guidance counselor positions. To determine which guidance counselors would be retained, the division of personnel established a formula for computing an "adjusted seniority date” for all guidance counselors. This formula took into consideration the time actually served by each person in the title of guidance counselor. To this was added veteran’s credit, if any. Unpaid leave of absence, while in this title, if any, was subtracted. After an adjusted seniority date for each guidance counselor was calculated, it was determined that each elementary school *462 guidance counselor whose adjusted seniority date fell on or after October 5, 1970, would be laid off. The corresponding date for junior high school counselors was October 1, 1969.
Petitioners attack this seniority formula because experience as a guidance counselor, with certain modifications, was made the primary seniority component. They contend that the formula instead should have used as its primary component total service within the school system. Since most of these petitioners had previous service within the system as elementary school teachers, they argue that this prior service should also have been considered in determining seniority.
A board of education may abolish teaching and staff positions, even where this requires discharging an employee tenured in that position. (Matter of Young v Board of Educ., 35 NY2d 31.) When such positions are abolished, terminations, when necessary, must be made in accordance with subdivision 3 of section 2585 of the Education Law which provides as follows: "Whenever a board of education abolishes a position under this chapter, the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued.” (Emphasis added.) Petitioners contend that the relevant tenure area here is elementary school teaching, of which guidance counseling is but one facet. The board of education, on the other hand, asserts that the relevant tenure area is elementary school guidance counseling, and that time spent as an elementary teacher therefore is of no significance.
Conceptually, there is no legal impediment to establishing elementary school guidance counseling as a separate tenure area. In Matter of Becker v Board of Educ. (9 NY2d 111), this court recognized the validity of the general concept of "tenure areas”. In Matter of Baer v Nyquist (34 NY2d 291, 295), we suggested that this concept was an expandidle one, and could encompass "vertical” subject matter classifications. We cited music and physical education as examples of special subject tenure areas (p 294.) While stating that tenure limited to curricular classifications could be permitted under the tenure statutes, we held that "they may not be imposed by local school boards subject only to retrospective approval by the Commissioner of Education” and that "[rjadical restructuring of tenure areas * * * should not be free of controlling regulations or express standards propounded by the Board of Regents or enacted by the Legislature” (p 294). In response to *463 Baer, comprehensive regulations defining the various tenure areas have been promulgated. (8 NYCRR Part 30.) While these regulations have no direct applicability here,[2] it is significant that "school counseling and guidance” is defined as a "special subject tenure area”. (8 NYCRR 30.8 [b] [2].) This is consistent with the Commissioner of Education’s ruling that "[t]he area of guidance has been traditionally held to constitute a special area” and "has long been accepted as a special tenure area”. (Matter of Glowacki, 14 Ed Dept Rep 122, 124.)[3]
The teaching of Matter of Baer v Nyquist (supra) relevant here is that a board of education may not engage in "radical restructuring” of the traditional tenure areas without reference to some controlling regulations or express standards propounded by the Board of Regents or enacted by the Legislature, and even then may do so only in a prospective manner. However, since elementary school guidance counseling has always been a traditional tenure area in the City School Districts of the City of New York, we conclude that the board in this regard has not undertaken any restructuring of tenure areas whatsoever and thus we would uphold its seniority formula.
While no single factor leads inexorably to this conclusion, we note a number of factors which, taken together, compel a determination that elementary school teachers were sufficiently alerted to the fact that in leaving their classrooms and taking on the duties of guidance counselors they were entering an entirely independent tenure area, one in which their previous elementary teaching experience would not be relevant in determining seniority. In the first place, as indicated in Matter of Glowacki (supra), and reaffirmed in the regulations referred to, the Commissioner of Education and the Board of Regents view guidance counseling as a separate tenure area. These views by our State’s chief educational officers are certainly entitled to great weight. Secondly, by virtue of section 298 of the by-laws of the city board, guidance counseling has been made a separate license area. (See Educa *464 tion Law, § 2573, subd 1, par [a], which permits creation of special licensing areas in school districts having a population of 400,000 or more.)
Another significant factor is that these petitioners found it appropriate to join with other guidance counselors in the city school district to create the Guidance Counselors Chapter of the United Federation of Teachers, their collective bargaining agent. In the chapter’s separate agreement with the board of education the following is one of the rules to be followed where "excessing” becomes necessary: "Within the school, district, bureau or other organizational unit, the guidance counselor with the latest date of appointment within license will be the first to be excessed”. (Emphasis added.) That provision is not specifically applicable to this situation because excessing is not precisely the same as laying off. Nevertheless, it clearly evidences the guidance counselors’ view that special importance should be attached to length of service within the separate license area of guidance counseling. The fourth factor we believe important is that in seeking licenses in this special area and in accepting positions as guidance counselors, petitioners voluntarily left their classrooms to assume radically different duties in their new positions. This again suggests that prior service as elementary school teachers should have no relevance in determining tenure area seniority.
Aside from these factors, the practical effect of a contrary holding must be noted. Few of the petitioners, even if successful in these proceedings, would likely be restored to their previous positions as guidance counselors, since many of those counselors who were retained would still have greater system-wide seniority. Instead, they would be returned to the positions they held some time ago when they were teachers in the elementary schools, thus "bumping” an equal number of the present tenured teachers. "Bumping” of this nature appears to be a procedure not contemplated by the by-laws of the city board of education. While section 248 .of these by-laws[4] makes *465 provision for a teacher to apply to be returned to his former position, either because his present position has been eliminated or for any other reason, such procedure can be used only to fill vacancies. Here there appear to be no vacancies which could be filled in this manner. Moreover, it hardly seems to make good educational sense to remove able teachers from the classrooms and replace them with persons whose most recent educational activity has been not teaching but counseling. Some of these counselors have not taught since 1970 or before, and all, undoubtedly, when appointed counselors, assumed they would never again teach and have therefore probably not continued their education in this regard. Some of the petitioners in these proceedings were, prior to being laid off, guidance counselors not in the elementary schools but in the junior high schools. The compelling factors already referred to apply equally to this group. Moreover, one additional consideration is present with respect to the junior high school counselors, namely, that tenure areas at the junior high school level generally are more likely to be defined by reference to the various specialized subject areas.
The dissent misconceives the majority view. The majority does not equate a license area with a tenure area. The cases make quite clear that license area and tenure area are not conterminous and there is no perverse conclusion that they should be so considered. That does not mean, however, that the particular license is not a factor to consider in determining the scope of a tenure area. Thus, a license to teach Spanish alone would not preclude elementary or secondary school tenure where horizontal tenure area obtains. On the other hand, a license to teach Spanish is hardly relevant to a tenure area confined to social studies or, as the dissent agrees, to guidance counseling.
The dissent also misconceives the purport of the clause "seniority in the system within the tenure of the position abolished”. The reference to system is to bar limiting seniority to a single school within a district, which otherwise could be *466 the case. But it is an incorrect parsing of the sentence to detach the meaning of the phrase "within the tenure” from the clause "seniority in the system”, a clause which it logically and grammatically qualifies. Thus, a teacher of a Romance language would achieve seniority "within the tenure of the position” if the tenure area were horizontal and applied to all secondary teachers, or if the tenure area were vertical but extended to all Romance languages, or conceivably, to all foreign languages. On the other hand, if the system-wide tenure area were confined to a particular language, Spanish or Greek for example, then the seniority would be confined to that narrow area, and yet would extend to all the schools in the district.
Our analysis, if correctly applied, is simple enough but impenetrable only if the issue is confused. The issue before the court is not whether the city and its board of education may lay off teachers. That some teachers must be laid off seems inevitable in light of the city’s present financial situation. That unfortunate consequence is fiscal, and not legal. What is the legal issue is on whom the hardship must fall, and that is to be determined by the law as the court interprets it and not by the predilections or particular sympathies of the Judges who must interpret the law.
There is one further issue, present in only one of the proceedings before us (Matter of Gerstein v Board of Educ.), raised by way of cross appeal. It is argued that the city board has totally eliminated guidance counseling services in certain community school districts within the city, in violation of 8 NYCRR 100.1 (a) and (d). As relevant here, subdivision (a) requires that as part of the curriculum for four-year high schools a "guidance and counseling program shall be provided, including the services of personnel certified for guidance service.” Subdivision (d) mandates that in the junior high schools "[tjhere shall be a definite and effective plan of pupil guidance, including the services of personnel certified for guidance service.” This regulation imposes no such requirements on the elementary schools. We think the rejection of this argument by the lower courts was correct, as the petitioners have failed to prove this assertion. It is not enough to merely show, as is claimed by petitioners, that all guidance counseling positions have been eliminated in certain districts. The cited regulation requires a "program” and a "plan”, "including the services of personnel certified for guidance
*467 service.” There is no mandate that this be done through the creation or retention of guidance counseling positions. The requisite programs could likely be maintained by utilizing the services of certified personnel whose primary duties are in other positions. Since there has been no showing that any guidance and counseling programs have been wholly eliminated, we conclude that this portion of the petition was properly dismissed.[5]
Accordingly, in Matter of Gerstein v Board of Educ., the order of the Appellate Division should be modified in accordance with this opinion, the petition dismissed, and the question certified answered in the negative. In each of the remaining proceedings the order of the Appellate Division should be reversed, the petition dismissed, and the question certified answered in the negative.[6]

. This figure of 409 included 286 elementary school and 123 junior high school guidance counselors. Approximately 518 guidance counselors were retained by the community school districts.
Guidance counseling was but one of many areas in which large reductions took place. For example, the record indicates that after-school sports, recreation and cultural programs suffered a 40% reduction, that 50% of all evening high school programs were eliminated, and that 2,350 school crossing guards were relieved of duty.

. These regulations have only prospective effect and are not applicable to city school districts located within cities having a population in excess of 400,000 inhabitants. (8 NYCRR 30.2.)

. The Supreme Court, Albany County (Gibson, J.), granted judgment dismissing a petition to review and annul this determination. (Unreported decision.) An appeal from that judgment is presently sub judice in the Appellate Division, Third Department.

. Section 248 of the by-laws provides as follows:
"Return to Former Position from Present Position. An appointed teacher employed under these By-Laws, may, on his application, be reassigned by the Superintendent of Schools to a vacancy in a grade or salary level in which he served satisfactorily for one year and for which he holds a valid license. Said application, upon such reassignment, shall be regarded as a resignation from the present position, and the license for such present position shall thereupon terminate. His salary thence forward shall be fixed as though all regular service rendered by him was in the position to which he is returned. Restoration to the present position in such a case may be effected only by a new probationary appointment from an appropriate eligible list.
*465 "Notwithstanding the provisions of the preceding paragraph, where an employee requests reassignment hereunder because of the elimination of his or her position for budgetary reasons, the license for the present position shall not terminate and restoration to the present position may be effected by the operation of a preferred eligible list.”
It should be noted that several of the petitioners unsuccessfully applied to the board under this section to be reassigned to their former positions.

. In two of the cases before us class relief was sought, and an issue has been raised as to whether those could properly be maintained as class proceedings under CPLR article 9. Since we have concluded that none of the named petitioners who purport to represent the class are entitled to any relief, we do not reach this issue.

. The court is aware of Assembly Bill No. 13043 recently passed by the Legislature and which awaits action of the Governor. The court has examined the bill and concludes that it involves so many issues and factors not involved in these cases that none of the questions which its enactment into law might raise would be entertain-able in these cases.