■    In the Matter of GERTRUDE ROBINSON et al., Respondents, v ROOSEVELT UNION FREE SCHOOL DISTRICT et al., Appellants.—In a proceeding pursuant to CPLR article 78 to compel the reinstatement of petitioners-respondents as remedial reading teachers, the appeal is from a judgment of the Supreme Court, Nassau County, dated September 14, 1976, which (1) adjudged that petitioners hold tenure as teachers of remedial reading and (2) directed their reinstatement to that tenure area. Judgment affirmed, with $50 costs and disbursements. The petitioners, Gertrude Robinson, Rita Hurley and Ruth Botwinick, each the holder of a common branch teaching license, were employed by the respondent school district on October 22, 1962, in September, 1964 and in March, 1966, respectively. Each, upon appointment, was immediately assigned to teach remedial reading at the primary school level. The three continuously held the position of remedial reading teacher over the ensuing years. We may assume that they established and developed skills in this specialized field. At no time were they engaged in general classroom teaching. Their positions as remedial reading teachers were abolished in February, 1974 and they were then assigned by the respondents-appellants to teach regular primary school classes. Petition-

ers, following intervention in the matter by their union, were reassigned to remedial reading classrooms. That assignment, however, was at the secondary school level. They were not informed that in taking such positions in appellants' high school they were entering a new tenure area, or that their periods of probation were to run anew (cf. *Matter of Becker v Board of Educ.,* 9 NY2d 111). In fact, a project abstract for reading teachers established a vertical span from the second to the twelfth grades. When the positions of high school teachers with longer periods of service than those possessed by the petitioners were terminated, and layoffs were taking place, the petitioners were left secure in their positions and no threat of their like termination was mentioned. Presently, however, petitioners again have been removed from their remedial reading classrooms to be placed on regular elementary classroom duty. It is our opinion that the relevant facts, outlined above, compel the conclusion that the teaching of remedial reading is now, and has been for some time, a traditional tenure area in the respondent school district (see *Steele v Board of Educ.,* 40 NY2d 456, 463). Additionally, we would point out, as did the Special Term, that in formulating new regulations, in apparent response to the ruling in *Matter of Baer v Nyquist* (34 NY2d 291), the Board of Regents chose to make the teaching of remedial reading a special tenure area; though not herein controlling, this is indicative of recognition that such area was, or should have been, traditionally treated in this manner. It appears to be the dissenter's position that by not specifically stating that the teaching of remedial reading constituted a special tenure area in *Matter of Becker v Board of Educ. (supra),* when it had the opportunity to so. do, the Court of Appeals, by omission or implication, held to, or indicated, the contrary. We disagree with such conclusion. The issue herein presented was not involved in *Becker,* and no reason for such a pronouncement or declaration presented itself. The facts were totally dissimilar. We note that *Matter of Pearl Riv. Teachers Assn. v Westbrook* (57 AD2d 570), handed down herewith, presented a case in a different posture than that at bar. While we have been herein called upon to determine whether, under the facts of this case, the teaching of remedial reading constituted work in a special vertical tenure area, in *Pearl Riv.* the court sought only to ascertain whether the defendants therein were guilty of contempt for failing to comply with an unappealed judgment of a court which confirmed an arbitrator's award. Hopkins, Acting P. J., Latham, Margett and Mollen, JJ., concur; Suozzi, J., dissents and votes to reverse the judgment and dismiss the proceeding on the merits, with the following memorandum: I cannot agree with the majority's holding herein for the following reasons: (1) The factors and considerations upon which the majority and Special Term rely do not, in my opinion, support the conclusion that remedial reading is a special subject tenure area; (2) The case law and the Commissioner of Education's rulings prior to the Board of Regents' regulations (8 NYCRR 30.8 [a] [13]) do not reflect a traditional recognition of remedial reading as a special subject tenure area as the majority suggests; (3) It is contrary to the intent and admonition of *Matter of Baer v Nyquist* (34 NY2d 291); (4) It constitutes an unnecessary and adverse intrusion into the administrative and educational policies of the school district; and (5) It is inconsistent with this court's determination in *Matter of Hannan v Board of Educ.* (55 AD2d 647). The three petitioners herein are holders of common branch certificates, which means that they can teach "any or all of the subjects usually included in the daily program of an elementary school classroom such as arithmetic, civics, visual arts, elementary science, English language, geography, history, hygiene, physical

activities, practical arts, reading, music, writing, and such other similar subjects" (8 NYCRR 30.1 [b]). It is undisputed that they were hired at separate times in 1962, 1964, and 1966, respectively, and immediately assigned to remedial reading duties, and that each attained tenure three years following the commencement of her employment. The petitioners continued to teach remedial reading until February, 1974, when their teaching positions were abolished and they were transferred to regular elementary school classroom duties. As a result of their protest and union intervention they were then reassigned to teach remedial reading at the high school level. In July, 1976 they were again notified that they were being reassigned to regular elementary school classroom duties; this proceeding was thereupon instituted. The majority herein alludes to a notice factor which is neither pertinent nor material to the determination of the issue here, as it was in *Steele v Board of Educ.* (40 NY2d 456). It is undisputed that from the time they were hired as common branch teachers, the petitioners were immediately assigned to remedial reading duties. There has never been any transfer of the petitioners from any elementary classroom duties to remedial reading assignments which can be factually construed, as the majority seems to do, as an abandonment of their elementary classroom duties. Unlike the situation in *Steele,* the teachers here are not being denied any time in service by the school board for the purpose of determining their seniority. It is undisputed that the petitioners here obtained tenure three years after their employment. The sole issue here is whether the tenure obtained was in the vertical area of remedial reading or in the horizontal level of elementary school teaching. The majority's reliance on a reading project abstract as a basis for its holding is the least persuasive. Interestingly enough, petitioners did not raise this particular argument either in their brief or their oral arguments. Moreover, the abstract itself indicates that the remedial reading program was instituted by the local school board as a means of obtaining a Federal subsidy and was not intended to reflect a particular syllabus within the school district. By predicating its holding on this abstract, the majority accords it an unwarranted status. As far back as 1961, in *Matter of Becker v Board of Educ.* (9 NY2d 111), the Court of Appeals had an opportunity to recognize remedial reading as a traditional special subject tenure area and did not. In that case the petitioner had sought to utilize time spent as a part-time remedial teacher at the elementary school level as part of her time in service in order to obtain tenure in the elementary school level tenure area. Implicit in petitioner's argument was the proposition that remedial reading was not a special subject tenure area, but rather was part of the horizontal tenure area of elementary school teaching. The Court of Appeals, in *Becker,* rejected petitioner's argument. However, it did not reject it, as it easily could have done, by holding that remedial reading was a special subject tenure area. Instead, the court in *Becker* chose to reject petitioner's argument on the ground that her remedial reading instruction at the elementary school level "was an incidental or sideline job and that it could not be the basis of additional probationary credit" *(supra,* p 116). Except for *Matter of Adler* (8 Ed Dept Rep 6), there was no ruling by a Commissioner of Education prior to the adoption of the Board of Regents' regulations (8 NYCRR 30.8 [a] [13]) which suggested that remedial reading is a special subject tenure area. The conclusory nature of that opinion is clearly evident from the conspicuous absence therein of any legal precedent or other supporting authority. The commissioner's own doubts about the validity of that opinion is evident from the fact that nearly one year later, in *Matter of*

*Fitzgibbons* (8 Ed Dept Rep 205), notwithstanding *Matter of Adler (supra),* the commissioner did not include remedial reading as one of the specified subjects which was recognized as a special subject tenure area. Special Term placed great weight on the Board of Regents' regulations which define remedial reading as a special subject tenure area (8 NYCRR 30.8 [a] [13]), ·and which were adopted subsequent to the Court of Appeals ruling in *Matter of Baer v Nyquist (supra).* As Special Term itself concedes, these regulations are prospective in effect only and they are not applicable here. Therefore, Special Term's reliance on them was totally misplaced. In holding that elementary school guidance counselling had been a traditional special subject tenure area, the Court of Appeals, in *Steele v Board of Educ. (supra),* referred to these same regulations, which also define guidance counselling as a special subject tenure area (8 NYCRR 30.8 [b] [2]). However, a reading of *Steele* will show that the Court of Appeals relied upon these regulations merely to demonstrate that they reflected a continuation of a traditional policy which had been developed since 1964 by *ad hoc* rulings of the Commissioner of Education (see *Matter of Angel,* 3 Ed Dept Rep 238; *Matter of Glowacki,* 14 Ed Dept Rep 122, 124). In view of the Court of Appeals holding in *Matter of Becker v Board of Educ. (supra),* and the Commissioner of Education's ruling in *Matter of Fitzgibbons (supra),* there is not evident or present the long-standing recognition of remedial reading as a special subject tenure area such as existed with respect to guidance counselling. Nor are there present here, as in *Steele,* the two additional factors, to wit, the requirement of a special license and a special collective bargaining agent for guidance counselors, upon which the Court of Appeals predicated its recognition of this special subject tenure area. To the extent that the majority's determination retrospectively recognizes a special subject tenure area in one of the academic core subjects, it offends the intent and spirit of *Matter of Baer v Nyquist (supra).* In *Baer* the Court of Appeals affirmed the lower courts' nullification of a determination of the Commissioner of Education approving a vertical tenure classification adopted by the Massapequa Board of Education. In *Baer,* the school board classified tenure at the junior high school level according to academic subjects. The court, in *Baer,* held that the Commissioner of Education could only define tenure area by prospective rule making rather than by *ad hoc* retrospective approval of local school district tenure experimentation, and that absent such prospective rule making, tenure was to be granted on the basis of horizontal or grade levels and certain specified subjects of an artistic or vocational nature. The court, in *Baer,* stated as follows (p 296, n 1): " 'It is axiomatic that tenure adheres to a particular area of instruction and encompasses all subjects within such area. "Area tenure" is descriptive of tenure at certain grade levels, such as elementary, secondary and kindergarten levels, and also of certain specified subjects, including physical education, music, art and vocational subjects. Apart from these specified subjects, tenure is not granted on the basis of course subjects but is only descriptive of grade level *(Matter of Van Heusen v Board of Education* [26 AD2d 721]; *Matter of Becker v Board of Education* [9 NY2d 111])' ". It is true that since *Baer,* the courts have expanded upon the *Baer* definition of the "certain specified subjects" which are susceptible to classification as traditional special subject tenure areas. Included in this latter group are the subjects of guidance counselling, driver education and school nurse teaching *(Steele v Board of Educ., supra; Matter of Glowacki v Ambach,* 53 AD2d 260; *Matter of Mitchell v Board of Educ.,* 40 NY2d 904; *Matter of Bruso v Board of Educ.,* 53 AD2d 692).* However, these subjects are clearly distinguishable

from that of remedial reading in that (1) they either constitute a unique discipline, require particular vocational skills or require certification (see 8 NYCRR Part 80) and (2) they are totally unrelated to the traditional academic curriculum. The teaching of remedial reading, on the other hand, as conceded by petitioners' attorneys on oral argument, requires no special skills or certification. Moreover, it bears an integral relationship with the traditional academic subject of reading, a subject which has always been included in the horizontal tenure area of elementary school teaching. The significance of this latter distinction is manifest in the recent decision of this court in *Matter of Hannan v Board of Educ.* (55 AD2d 647, *supra* ), where we held that the position of elementary school librarian, which also bears an integral relationship to the academic curriculum, was not a special subject tenure area separate and distinct from the tenure area of elementary school teaching. The majority ruling constitutes an unnecessary and adverse intrusion into the administrative and educational policies of the school district because it precludes the utilization of these petitioners as regular teachers at the elementary school level, where their services are needed more than they are as remedial reading teachers in the high school. At the same time the majority's holding mandates and sanctions the continued employment of the petitioners as remedial reading teachers at the high school level, a level for which they have not been certified or specially trained. Under the existing regulations (8 NYCRR 30.8 [a] [13]; 8 NYCRR 80.1 [30]), although remedial reading is defined as a special subject tenure area, remedial reading is not defined as a "special subject" and there is no provision whatsoever for the certification of remedial reading teachers. It is quite unlikely that even in this posture of regulations that it was ever contemplated prospectively by the Board of Regents that teachers certified for a particular grade level should be permitted to teach remedial reading outside of that level. Until such time as provision is made for the certification of remedial reading teachers, this court should not by indirection certify an elementary school teacher as a remedial reading teacher on the secondary school level. By carving out a special tenure area for the petitioners, the majority is effectively investing them with greater rights than other elementary teachers who may have been hired simultaneously with or prior to them, but who had not been assigned to remedial reading duties. Accordingly, I dissent and vote to reverse the judgment and dismiss the petition.