**Dr. H. Allen ORSHAN, Plaintiff,**

v.

**Irving ANKER, James Boffman, Frank J. Macchiarola, Board of Education of the City of New York, Defendants.**

**No. 79 CV 309 (ERN).**

United States District Court,
E.D. New York.

Nov. 3, 1982.

Frederic J. Gross, Haddonfield, N.J., for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, by Leslie K. Shedlin, Marian M. Schuman, New York City, for defendants.

MEMORANDUM AND ORDER

NEAHER, District Judge.

This is an action for declaratory and monetary relief brought by a former employee of the New York City Board of Education (the "Board"). Essentially, plaintiff's complaint alleges that defendants refuse to acknowledge his claim to tenure as a day high school principal, a right he contends is secured by New York's common-law doctrine of tenure by estoppel, and that this refusal is a product of defendants' conspiracy to deprive him of his civil rights.

When it was initially commenced in February 1979, plaintiff asserted a variety of constitutional and statutory grounds for relief. In July 1979, however, defendants made a motion for summary judgment which this Court granted with respect to all but one of these legal theories. *Orshan v. Anker,* 489 F.Supp. 820 (E.D.N.Y.1980). Specifically, plaintiff's § 1985 claim was dismissed for failure to allege a class-based discriminatory animus, *id.* at 823, his § 1986 action was rejected as frivolous, *id.* at 824, and his due process claim that he was deprived of a "liberty interest" was found to be legally insufficient, *id.* In addition, this Court held that plaintiff's First Amendment rights were not violated by his removal and that any procedural irregularities in the school board review of that dismissal did not raise a constitutional question. *Id.* at 822 n. 1, 824 n. 2. Only plaintiff's claim that he had acquired tenure by estoppel and thus had a "property interest" protected by the Due Process Clause raised a material question of fact.

The case is now before the Court on plaintiff's motions for leave to amend his complaint to reassert the dismissed causes of action and for partial summary judg-

ment on the amended complaint. Defendants oppose the amendment of the complaint and again move for summary judgment on the surviving cause of action relating to tenure.

At the outset, it is clear that plaintiff's motion to amend the complaint, insofar as it attempts to resurrect claims previously dismissed, must be denied under the law of the case doctrine. This sound principle of judicial administration precludes the unwarranted reconsideration of legal decisions rendered in previous litigation between the same parties. *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Schupak v. Califano,* 454 F.Supp. 105, 114 (E.D.N.Y.1978). Simply put, the rule provides that when "a federal court enunciates a rule of law to be applied in the case at bar ... it establishes the law, which other courts owing obedience to it *must,* and which it itself will, normally apply to the same issues in subsequent proceedings in that case." 1B Moore's Federal Practice ¶ 0.404[1] at 402–03 (2d ed.1982). Although a court is not bound by its former decisions and may overturn them in the face of "compelling reasons," *Dale v. Hahn,* 486 F.2d 76, 81 (2d Cir.1973), this discretion must be exercised sparingly, "so as not to undermine the salutor. policy of finality of adjudication that is the basis of the law of the case." *United States v. Fernandez,* 506 F.2d 1200, 1204 (2d Cir.1974).

In this case, plaintiff claims that newly discovered evidence justifies reevaluation of this Court's previous ruling. However, new evidence will not resuscitate legally deficient allegations; additional facts could not then, nor can they now, forestall summary judgment on those portions of the complaint which were dismissed for failure to state a claim. Thus, despite plaintiff's newly discovered "conspiratorial acts," the § 1985 claim still "fails entirely to set forth any allegation of class-based discriminatory animus." *Orshan v. Anker,* 489 F.Supp. at 824.

Similarly, plaintiff's claim under the First Amendment again fails to allege the necessary nexus between his right to free speech and his removal as principal of Julia Richman High School. His assumed right to First Amendment protection against community complaints regarding his rejection of the UFT drug program simply misconstrues case law that has been developed to protect the academic freedom of teachers from unconstitutionally motivated reprisals in order to ensure the free flow of ideas in our schools. Thus, unlike curricular decisions motivated by censorship, *Board of Ed. v. Pico,* —— U.S. ——, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982), racial bias, *Loewen v. Turnipseed,* 488 F.Supp. 1138 (N.D.Miss. 1980), or involving pedagogical indoctrination, *see, e.g., Tinker v. Des Moines Indep. School Dist.,* 393 U.S. 503, 512, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969); *Keyishian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967), no First Amendment right is infringed when a probationary principal is removed by his superiors for making a discretionary, but purely administrative, decision with which portions of the community strongly disagree. *Cf. Mercer v. Michigan State Bd. of Ed.,* 379 F.Supp. 580 (E.D.Mich.), *aff'd per curiam,* 419 U.S. 1081, 95 S.Ct. 673, 42 L.Ed.2d 678 (1974) (State has ultimate power over curricular and administrative decisions absent an unconstitutional motivation).

*Gonzalez v. Shanker,* 399 F.Supp. 858 (S.D.N.Y.1976), *aff'd on other grounds,* 533 F.2d 832 (2d Cir.1976), the sole legal authority cited by plaintiff, is not to the contrary. In *Gonzalez,* the plaintiff alleged that during a vitriolic school board election, defendants threatened him with reprisals unless he campaigned for a particular candidate and repudiated his support for another. Thus, plaintiff clearly alleged that defendants were motivated by a desire to punish him for exercising his First Amendment right to publicly support or not support a political candidate. No such allegation has been made in this case.

■ Plaintiff also attempts to renew his claim that he was deprived of a liberty interest in "his good name and reputation" by alleging for the first time that the Board actually publicized defendant Boffman's unsatisfactory rating of plaintiff's job performance. While this obviates one defect in the original complaint, the amended complaint still fails to allege a cognizable infringement of his liberty interests. To be actionable, the rating must have falsely called into question plaintiff's "good name, reputation, honor, or integrity," *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 446 (2d Cir.1980) (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970)). An unsatisfactory professional rating by itself does not amount to the type of "stigma" necessitating a hearing under the Due Process Clause. *Haron v. Board of Ed.,* 411 F.Supp. 68, 72 (E.D.N.Y.1976). Since the rating in this case did no more than question plaintiff's leadership and administrative abilities, no stigma, within the meaning of the Due Process Clause, can be said to have attached. *Russel v. Hodges,* 470 F.2d 212 (2d Cir.1972).

■ Plaintiff's renewed attempt to revive his claim that the procedures utilized in his bylaw 105a appeal were unconstitutional must also fail despite his new allegation that no Chancellor ever reviewed the committee's findings. This Court has previously held that non-tenured employees have no due process right to have the Chancellor review the findings of a pre-termination hearing simply because the bylaws of the Board of Education provide such a procedure. *Weiss v. Anker,* 421 F.Supp. 1040, 1043 (E.D.N.Y.1976). The rationale for this rule is simple: the results of a 105a hearing are merely advisory and are not binding on the Chancellor. *Kaufman v. Anker,* 42 N.Y.2d 835, 838, 397 N.Y.S.2d 376, 377, 366 N.E.2d 77 (1978). Furthermore, while plaintiff may have had a due process right to the hearing, *see Weiss, supra,* he not only was afforded such a hearing, but he also was granted the court-ordered right to a *de novo* 105a hearing if he should request it. Quite simply, plaintiff has received all the due process that was mandated in this situation.

■ We now turn to the one claim that survived the defendants' previous motion for summary judgment. As previously stated, to sustain a claim to tenure by estoppel under New York law, plaintiff must show that he rendered actual service beyond his probationary term in the same or similar position performing substantially similar duties with the Board's knowledge and consent. *Orshan v. Anker,* 489 F.Supp. at 825. Counsel for plaintiff, however, continues to argue that tenure can be acquired simply by a school board failing to provide an explicit written denial of tenure when that omission is coupled with affirmations of tenure by Board agents to third parties or to the personnel record.[1] Unfortunately, counsel points to no judicial decision which supports this position. Even if we were to agree, this Court is bound by the rulings of New York courts on this question of State law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). We thus adhere to our previous interpretation of the requirements of tenure by estoppel under New York law and turn to the issue of whether summary judgment is appropriate.

The only material issues of fact reserved by our previous review of plaintiff's claim to tenure by estoppel were: (1) whether the

---

1. Plaintiff's brief makes reference to a "promissory estoppel" theory of recovery, which has been recognized by at least one New York court. *Moritz v. Board of Ed.,* 60 A.D.2d 161, 400 N.Y.S.2d 247 (4th Dep't 1977) (Board equitably estopped from denying its written grant of tenure). This theory, however, requires plaintiff to at least allege that he changed his position in reliance on the Board's conduct, a requirement not met in this case. *Id.* at 251.

Plaintiff has never alleged that he did not seek or turned down other employment in reliance on defendant's alleged assurances of tenure. The alleged reliance of plaintiff's councilman or union is unsupportable; even if they were aware of the facts alleged by plaintiff, neither had any legal authority to secure tenure for plaintiff. *See Morris Central School Dist. Bd. of Ed. v. Morris Ed. Assoc.,* 388 N.Y.S.2d 371 (3d Dep't 1976).

duties performed by plaintiff after his removal as principal of Julia Richman High School fell within the same "tenure area" as a principal of a day high school; and (2) whether the defendants consented to such continued service beyond plaintiff's three-year probationary period. Both parties now agree that these questions no longer present issues of fact unresolvable on summary judgment.

Although tenure area is now governed by statute, N.Y.Educ. Law § 2588 (McKinney 1981) (effective July 1, 1976) (license area equals tenure area), this legislation cannot be applied retroactively. *See Steele v. Board of Ed.,* 40 N.Y.2d 456, 464, 387 N.Y. S.2d 68, 71, 354 N.E.2d 807, 810 (1976). Hence, the parameters of tenure area in this case are governed by the Court of Appeals decision in *Steele, supra.*

In *Steele,* the court recognized that certain pedagogical functions have traditionally been afforded special tenure areas as a matter of custom and usage. Delimiting one traditional area from another, the court pointed out, necessitates a consideration of a number of factors, the most important of which is whether an individual would be "sufficiently alerted" by the change in duties to know that he was "entering an entirely independent tenure area, one in which [his] previous . . . experience would not be relevant in determining seniority." *Id.* at 464, 387 N.Y.S.2d at 71, 354 N.E.2d at 810. Thus, in the case before it, the court had no difficulty finding as a matter of law that the duties of elementary school teachers were so "radically different" from the duties of guidance counselors that the two areas constituted separate tenure areas. *Id.*

Cases subsequent to *Steele,* however, have apparently recognized that, in the absence of a clear cut difference in duties, such as that between supervisory and non-supervisory positions, the courts should interpret tenure areas liberally. Thus, in *Hannan v. Board of Ed.,* 55 A.D.2d 647, 390

N.Y.S.2d 148 (2d Dep't 1976), *appeal denied,* 42 N.Y.2d 801, 397 N.Y.S.2d 1025, 366 N.E.2d 292 (1977), the court held that the duties performed by a librarian, an elementary school teacher and a high school teacher social studies teacher were sufficiently related to be within the same tenure area. Viewed in this light, it is clear that the duties performed by plaintiff after his reassignment from Julia Richman High School did not differ so radically from those performed by a regularly assigned day high school principal as to fall outside the tenure area of a principal.

Plaintiff's deposition testimony, which is undisputed, states that he was initially assigned to Board Headquarters to perform any supervisory duties which Assistant Superintendent Boffman might require. Over the period of approximately 13 months, he worked on a variety of projects, which admittedly bore little resemblance to the duties of principal. However, plaintiff's assigned duties during his eight years at Seward Park High School included the day-to-day supervision of six departments: special education, art, physical education, music, industrial arts and health education. He was entrusted with the scheduling of classes and assignment of teachers within these departments. Plaintiff also was required to arrange with Board Headquarters for the assignment of librarians and the procurement of industrial art equipment for the high school.

Plaintiff also acted as Seward Park's deputy principal, apparently at the behest of Mr. Maloff, the assigned principal. He chaired faculty meetings, substituted for the principal on occasion, and represented the school at community organization meetings. He often consulted with the principal on various internal school problems. Plaintiff also states that he reported directly to the Superintendent of High Schools. Plaintiff was clearly more than the Chairman of the Music Department at Seward Park; he was essentially the second principal of Seward Park.[2]

---

**2.** It is undisputed that the Board of Education organizational chart of Seward Park High

School had to be changed to show that two principals were assigned to the school. Fur-

Given the array of duties performed by plaintiff, it cannot be said that a reasonable person would have found them irrelevant to determining tenure as a day high school principal. The Court holds, therefore, that plaintiff's reassignment to Seward Park High School did not place him in a new tenure area.

 The final question in this case is whether the Board acquiesced in plaintiff's continued service beyond his three-year probationary period.[3] It is undisputed that plaintiff served on a principal's appointment for nine consecutive years. It is also undisputed that plaintiff served throughout this period on a principal's license and received a principal's pay. Defendants no longer contend that plaintiff retained these benefits as a result of a clerical error, but now admit that it was done knowingly and intentionally.

The most telling admission by defendants of their knowledge of plaintiff's continued services is a letter dated June 29, 1973. Written by defendant Boffman to Chancellor Anker, this letter memorializes Boffman's telephone conversation with plaintiff's city councilman. The letter reads, "Dear Mr. Anker: I called Councilman Morton Povman as you directed.... I explained that Dr. Orshan is a tenured high school principal who receives the salary of a high school principal while serving as chairman of depart [sic] in music." Clearly, the Chancellor and other members of the Board were well aware of plaintiff's title, rank, license and pay, and thus knowingly permitted plaintiff to continue his appointment beyond his probationary period.

Consequently, this Court rules that plaintiff acquired tenure as a day high school principal by estoppel, and that his demotion in 1978 without a hearing as required by N.Y. Educ. Law § 3031 (McKinney 1978)

violated the Due Process Clause of the Fourteenth Amendment.

Accordingly, plaintiff's motion for summary judgment declaring his right to tenure as a day high school principal is granted and all other motions are denied. The parties shall submit proposed forms of judgment within fifteen (15) days from the date hereof.

SO ORDERED.

---

thermore, defendant Boffman, as Assistant Superintendent of High Schools, instructed Mr. Maloff that he was free to utilize plaintiff's services as he saw fit.

3. Defendants argue that defendant Boffman's written *recommendation* to discontinue plaintiff's probationary appointment was sufficient

notice to actually discontinue it. This liberal construction of the notice requirement of N.Y. Educ. Law § 3012, however, has been rejected in a similar context. *Mathews v. Nyquist,* 67 A.D.2d 790, 412 N.Y.S.2d 501 (3d Dep't 1979) (notice stating that teacher was "not being granted tenure at this time" held insufficient).