OPINION OF THE COURT
John R. Tenney, J.
In September, 1973, Glenda Connell, the petitioner, was employed as a guidance counselor at the Manpower Development and Training Facility in Utica and served in the same position at a successor facility, the Career Development Center (CDC). The CDC was funded under the Federal Comprehensive Employment and Training Act of 1973 (CETA) (US Code, tit 29, § 801 et seq.), until termination of the program on September 30, 1981. Petitioner’s position was abolished and her services were terminated at that time.
Petitioner commenced this proceeding seeking reinstatement on the ground that she had acquired tenure by acquiescence and that her termination was, therefore, in violation of section 3020-a or 2510 of the Education Law. *914 The matter was referred for hearing under CPLR 7804, and it was held commencing November 29, 1982.
At the hearing, it was revealed that the “prime sponsor” of CETA was the County of Oneida. From 1973 to 1981, the county entered into a series of annual agreements with respondent board of education whereby it assumed administration of CDC. Oneida County retained control over the basic budget and program content, and respondent hired all personnel and paid salaries through its financial office. In addition, petitioner was supervised by respondent’s head counselor and was enrolled in the New York State Teachers’ Retirement System as an employee of the board of education.
All CDC employees were represented by the Utica Teachers Association (UTA) in their contract negotiations. However, every collective bargaining agreement between 1973 and 1981 contained a separate article for CDC employees only. The introductory paragraph stated that CDC only existed “by the ‘agent’ relationship between the District and Oneida County”, and the final paragraph made the article contingent upon county approval.
CDC itself was designed to serve individuals 16 and older on a county wide basis. In addition to the Utica facility, CDC operated a branch office in Rome; it provided vocational and occupational programs, English as a second language program and client counseling services. There was also interaction with other governmental agencies. Two other programs were housed in the same facility with CDC: EDC (Educational Development Center), which provided alternative forms of high school education for persons 16 to 21; and ABE (Adult Basic Education), which was directed toward out-of-school individuals 16 and over. Enrollment in both EDC and ABE was restricted to residents of the Utica school district.
Petitioner testified that she served in a full-time guidance counselor position. Her duties consisted of counseling persons age 16 through the late 50’s as to educational, employment and personal matters. Her clients resided in various areas of Oneida County and had been referred to CDC by a number of agencies on the city, county and State levels.
*915 Petitioner contends that respondent was her “employer” by virtue of the fact that it had the ability to control her job duties (Binghamton Public Lib. Unit of Broome County Ch. of Civ. Serv. Employees Assn. v City of Binghamton, 69 Misc 2d 1005; Matter of Board of Educ. v Nyquist, 45 NY2d 975, revg on dissenting opn below 59 AD2d 76, 79 [Greenblott, J.]); that the source of funding is irrelevant to a determination of whether a teacher should be accorded protection under the various tenure statutes (Matter of Feinerman v Board of Coop. Educational Servs., 48 NY2d 491, 499); that the residency of the pupils is not relevant since school districts are authorized to admit nonresidents (Education Law, §§ 2045, 3203). Petitioner also argues that guidance counseling is a recognized tenure area (Steele v Board of Educ., 40 NY2d 456; Matter of Glowacki, 14 Ed Dept Rep 122, affd 53 AD2d 260, mot for lv to app den 40 NY2d 806), and that respondent has no authority to subdivide this tenure area so as to isolate CDC counselors from other school district counselors. (Matter of Nicolette, 17 Ed Dept Rep 381; Matter of Jones, 17 Ed Dept Rep 161.)
Respondent contends: (1) petitioner was not, and could not, have been appointed to a permanent position by the board of education because no such vacancy ever existed within the school district itself, and (2) even if petitioner might have acquired tenure rights through her employment at CDC, she waived the protection of the tenure statutes under the doctrine established by Matter of Feinerman v Board of Coop. Educational Servs. (supra).
In this matter, respondent entered into a contract to provide a special service for the county, apart from its statutory responsibilities. In the cases cited, the school districts involved were acting in furtherance of and within the parameters of their statutory responsibilities. Therefore, because of this distinction, it is necessary to reexamine the precedent cases to determine their relevance.
The leading cases are Matter of Board of Educ. v Nyquist (supra), Ricca v Board of Educ. (47 NY2d 385), and Matter of Feinerman v Board of Coop. Educational Servs. (supra).
The City of Oneida case (45 NY2d 975, supra) involved a reading teacher’s position in the school district which was funded under the Federal Emergency Employment Act of *916 1971. This was a new position not authorized by the board, nor was there any board action appointing Durr as a “probationary”. However, as a reading teacher Durr performed a service for the school district. The board argues that this position was “temporary” because it could only be continued so long as the funds were available.
In the dissenting opinion (subsequently adopted by the Court of Appeals), Judge Greenblott stated (59 AD2d, at pp 79-80): “The majority also places great emphasis upon a finding that petitioner’s school district had no permanent vacancy for a reading teacher, and refers to petitioner’s 'financial inability * * * to provide for such a position’. The majority ignores, however, the wealth of precedent * * * in support of the view that 'temporary’ appointments are prohibited * * * a position was in fact created by petitioner at such time as funding became available, and no basis has been presented in law, statutory or otherwise, for permitting the petitioner to have denied Durr the protections of the Education Law on the ground that petitioner has failed to formally designate a position as permanent.”
The distinctions are obvious. In the City of Oneida case, the teacher worked within the existing structure of the school district, and her duties were similar to those performed by other teachers employed by the school district. Here, petitioner did not serve within the existing school system but instead performed duties unique to CDC. Certain school district employees provided counseling services to school-age individuals under the auspices of the school district. Petitioner counseled a different type of clientele distinctively within the scope of the requirements and objectives of CDC.
Furthermore, in the present situation there is no evidence of an attempt to “subvert the tenure statutes by filling a permanent vacancy with the appointment of a ‘temporary’ ”. (Matter of Board of Educ. v Nyquist, 59 AD2d 76, 77, supra.) Petitioner’s position was not in existence prior to respondent’s entering into the contract with the county, was not a responsibility of the board or within its mandates and no similar position was created after the contract expired.
*917 It becomes evident that the position held by petitioner was a creation of CDC to fill its needs. It did not satisfy any board requirements, nor was it contingent upon the availability of funds. It was a CDC function and was dropped when CDC ceased to exist. The board has no statutory duty or authority to provide counseling to adults and no mandate to provide any educational facility to persons outside its district lines.
Petitioner refers to certain statements made at a school board meeting on May 12, 1981, that some “bumping rights” might exist, but such comments have no significance. Also, it is argued that a CDC employee, Charles Grant, was assigned to teach social studies within the district after termination of his position at CDC. The Grant case has no bearing on petitioner’s position. His affidavit indicates that between 1975 and 1979 he was employed at the Educational Development Center “in which enrollment was limited to residents of the Utica City School District” and which was operated solely under respondent’s auspices. In 1979, he was “involuntarily transferred” to CDC. Hence, Grant’s tenure rights were not acquired through employment at CDC but by virtue of the fact that he had initially been employed to fill a vacancy within the district. His subsequent involuntary transfer did not strip him of rights earlier obtained.
Furthermore, Grant’s duties at EDC and CDC “were the same”. In petitioner’s case, there was no corresponding position within the district, and there is none now.
Ricca v Board of Educ. (47 NY2d 385, supra) involved a full-time teacher performing duties within the district and is similarly distinguishable. The court held that once she performed the duties of a full-time permanent employee, it was improper to delay formal appointment.
Petitioner contends that any distinctions drawn between K-12 guidance and adult guidance are not sufficient to uphold a finding that these are separate “tenure areas”, within the school district. That is not the point of this decision. Because of its unique aspects — contractual, adult oriented, countywide in scope — CDC maintained a separate identity and performed a duty, as indicated above, which was outside the legal mandate of the board. This is *918 not the maintenance of a separate “tenure area”, but the performance of a totally different and unique function.
Nevertheless, even with the restricted analysis proposed by petitioner, the same result would obtain. Petitioner argues that under both the Rules of the Board of Regents (8 NYCRR 30.8), and the relevant case law (Steele v Board of Educ., 40 NY2d 456, supra; Matter of Robinson v Roosevelt Union Free School Dist., 57 AD2d 570; Matter of Jones, 17 Ed Dept Rep 161, supra), guidance counseling is a special subject tenure area which cannot be “vertically” subdivided by grade level. Hence, petitioner must be included with all elementary and school guidance counselors when comparing seniority for purposes of termination.
As is indicated above, this conclusion does not necessarily follow from the authority relied upon by petitioner. In addition, it must be noted that petitioner misquotes the Rules of the Board of Regents. 8 NYCRR 30.8 (b) (2) refers to a special subject tenure area of “school counseling and guidance” not counseling and guidance in general. While including the word “school” should not be overemphasized, it has an obvious impact when related to CDC which was created to provide occupational related services for out-of-school individuals.
Similarly, the cases cited by petitioner deal with attempts to subdivide tenure areas between K-12 and do not consider adult occupational or educational services. Indeed, the fact that the literature is so restricted indicates that the Board of Regents, Legislature and courts have not contemplated expanding the scope of tenure areas beyond the traditional school district setting. On the evidence herein presented, it. would not now be proper to do so.
It is necessary to reach the issue of a waiver of tenure rights under the doctrine of Matter of Feinerman v Board of Coop. Educational Servs. (48 NY2d 491, supra). However, it would not appear that the contract language here would rise to the level of the knowledgeable, unequivocable consent required by that decision.
The preponderance of the evidence indicates that the position held by petitioner was not eligible for tenure within the school district and that it did not acquire this status because of respondent’s actions.
*919 Judgment in favor of the respondent is granted.
There appears to be a possible conflict of interest because petitioner’s attorney is also the representative of board of education counselors who might be affected should there be a favorable decision for this petitioner.