In the Matter of ELLEN ACINAPURO et al., Respondents, v BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY, Respondent, and EAST MEADOW UNION FREE SCHOOL DISTRICT et al., Appellants.

Second Department, November 1, 1982

APPEARANCES OF COUNSEL

*Dalton, Henoch & Kadin* (*Gilbert Henoch* of counsel; *Jack I. Slepian* on the brief), for appellants.

*James R. Sandner* (*Jacob S. Feldman* of counsel), for petitioners-respondents.

*Seymour H. Kligler* (*David R. Kay* of counsel), for respondent-respondent.

OPINION OF THE COURT

MOLLEN, P. J.

This appeal calls upon us to determine the statutory employment rights of four tenured teachers who, for budgetary reasons, were excessed by the Board of Cooperative Educational Services of Nassau County (BOCES).

Established pursuant to article 40 of the Education Law, BOCES offers co-operative or shared educational services and programs to its component school districts, which now comprise all of the 56 public school districts of Nassau County. Its offerings are of a wide variety, ranging from vocational training to programs designed for the learning disabled and physically impaired.

The relationship between BOCES and any component school district is essentially contractual. In February of each year, BOCES notifies its school districts of the programs and services it plans to offer in the following school term. In April, the school districts advise BOCES of the programs they intend to utilize and of the number of students who will participate in each. Thereafter, appropriate contracts are entered into between BOCES and the participating school districts, and the contracts are ultimately filed with the Commissioner of Education (see Education Law, § 1950, subd 4, par d).

Appellants East Meadow Union Free School District (East Meadow) and Hempstead Union Free School District (Hempstead) are each component school districts of

BOCES and participate in a number of its programs. The controversy at bar arises out of the appellant school districts' decisions to discontinue their participation in one of those programs.

During the 1979/1980 school year, both East Meadow and Hempstead utilized BOCES itinerant teaching program for learning disabled and physically impaired students. In that program, BOCES would furnish special education teachers for sessions with the participating students, each of whom would attend between two and five one-hour sessions per week in his own school. For most of the school day, the students would attend regular classes with nonhandicapped children.

In the spring of 1980, East Meadow and Hempstead gave notice of their intended participation in BOCES programs for the following school year. Neither district listed students to take part in the BOCES itinerant teaching program. Instead, effective September 1, 1980, the school districts established their own programs for the instruction of students previously enrolled in that program. For East Meadow, the change involved a total of 36 students and resulted in the hiring of three probationary teachers to fill newly created positions in the general special education tenure area. Ten students were involved for Hempstead which hired one probationary teacher, also in the general special education tenure area.

The actions of East Meadow and Hempstead were apparently not atypical. Over several preceding years, enrollment in BOCES programs staffed by teachers in the general special education tenure area had been steadily declining. As a consequence several of BOCES teaching positions had been abolished.

On May 30, 1980, after East Meadow and Hempstead had revealed their intention to end participation in the itinerant teaching program, the four petitioners, each on the BOCES teaching staff and each with tenure in the general special education tenure area, were notified that their positions would be eliminated effective June 30, 1980. None of the petitioners had been assigned to the itinerant teaching program from which East Meadow and Hempstead had withdrawn students. Petitioners Acina-

puro and Young had been employed at the Cerebral Palsy School. Petitioner Glassberg had worked in the Transitional Program. Petitioner Barnett had been assigned to the Primary Program.

On or about December 19, 1980, the petitioners commenced this proceeding pursuant to CPLR article 78, seeking, *inter alia,* to have themselves "reinstate[d]" as full-time teachers in East Meadow or Hempstead, *nunc pro tunc* to September 1, 1980. Petitioners claimed that the manner in which their BOCES positions were terminated was improper and that they were entitled to full-time teaching posts with East Meadow or Hempstead pursuant to the provisions of section 3014-b of the Education Law.

■ In a judgment dated May 19, 1981, Special Term found (1) that East Meadow and Hempstead had taken over the itinerant teaching program within the meaning of section 3014-b of the Education Law, (2) that the petitioners were directly affected by the takeovers, and (3) that the four most senior Nassau BOCES teachers, employed in the tenure area of the program and excessed because of the takeovers, are entitled to the new positions created to staff the programs established in East Meadow and Hempstead. The court directed (1) that East Meadow and Hempstead immediately send BOCES official notice that the programs in question have been taken over, (2) that upon receipt of such notice, BOCES determine which of its teachers have been affected by the takeovers and notify them of the fact of the takeovers and the school districts involved, (3) that BOCES notify East Meadow and Hempstead of the relative seniority of the affected teachers, (4) that BOCES promulgate a preferred eligible list of candidates for appointment to newly created positions in the school districts' programs established in consequence of the takeovers, and (5) that East Meadow and Hempstead fill all such programs with the most senior teachers appearing on the BOCES list who assert their rights to those positions. The petitioners' prayer for back salary was denied. Only East Meadow and Hempstead have appealed from the judgment. There should be an affirmance.

Our decision necessarily turns upon an interpretation of section 3014-b of the Education Law. That statute, as it

read at the time petitioners were excessed, provided in pertinent part as follows:

"§ 3014-b. Teachers' rights as a result of a school district taking over a program formerly operated by a board of cooperative educational services

"1. In any case in which a school district duly takes over the operation of a program formerly provided by a board of cooperative educational services, each teacher employed in such a program by such a board of cooperative educational services at the time of such takeover by the school district shall be considered an employee of such school district, with the same tenure status he maintained in such board of cooperative educational services.

"2. If the number of teaching positions needed to provide the services required by such program by the school district is less than the number of teachers eligible to be considered employees of such school district as provided by subdivision one of this section, the services of the teachers having the least seniority in the board of cooperative educational services whose programs are taken over by the school district within the tenure area of the position shall be discontinued. Such teachers shall be placed on a preferred eligible list of candidates for appointment to a vacancy that may thereafter occur in an office or position under the jurisdiction of the school district similar to the one such teacher filled in such board of cooperative educational services. The teachers on such preferred list shall be reinstated or appointed to such vacancies in such corresponding or similar positions under the jurisdiction of the school district in the order of their length of service in such board of cooperative educational services, within four years from the date of the abolition of such office or position * * *

"4. In the event that more than one school district duly takes over the operation of a program formerly provided by a board of cooperative educational services, then each teacher employed in such program by such board of cooperative educational services at the time of such takeover by more than one school district, shall select the particular school district in which he shall be considered an employee,

with all of the rights and privileges provided by the other provisions of this section. Such selection of the particular school district by such teacher is to be based upon each teacher's seniority in such board of cooperative educational services, with the right of selection passing from such teachers with the most seniority to such teachers with least seniority. Any such teacher who is unable to obtain a teaching position in any such school districts because the number of positions needed to provide the services required in such programs with such school districts are less than the number of teachers eligible to be considered employees of such school districts, shall be placed on a preferred eligible list in all such school districts in the method and with all of the rights provided by the other provisions of this section.

"5. This section shall in no way be construed to limit the rights of any such teachers set forth in this section granted by any other provision of law."

The statute has received virtually no judicial scrutiny and, accordingly, we are presented with an issue of first impression. The appellant school districts, seeking reversal, offer arguments which rest upon a narrow interpretation of the language of the statute. The petitioners maintain that a literal adherence to the wording of the provision would frustrate its purpose and intent. We agree with the petitioners, and we treat with the appellants' contrary arguments *seriatim.*

East Meadow and Hempstead argue first that there has been no takeover of a BOCES program within the meaning of the statute and that therefore the statute is inapplicable to the petitioners. Thus, the petitioners would remain without remedy as teachers excessed by BOCES. Pointing to the fact that BOCES continues to offer and provide an itinerant teaching program notwithstanding the withdrawal of East Meadow and Hempstead students therefrom, the school districts argue that the program has therefore not been taken over because a takeover necessarily implies a discontinuance of the BOCES program.

The flaw in this argument is that it would render section 3014-b without force or effect except in the relatively rare circumstance in which districts utilizing a particular

BOCES program simultaneously decide to withdraw all their students therefrom. We cannot agree that the Legislature could have intended to withhold the protection of the statute from teachers excessed on account of the withdrawal of some, but not all, students in a program which BOCES chooses to continue on a reduced scale. Instead, we hold that, where a component school district withdraws its students from a BOCES program and establishes an equivalent program of its own, it has taken over the program within the contemplation of section 3014-b of the Education Law (see *Matter of Owlett,* 16 Ed Dept Rep 317; see, also, *Matter of Angello v Board of Coop. Educational Servs.,* 80 Misc 2d 472, affd 55 AD2d 806). Significantly, the Commissioner of Education has given the statute a similar interpretation (see *Matter of Owlett, supra*). His view is entitled to substantial weight and, indeed, must be upheld unless irrational (see, e.g., *Matter of Howard v Wyman,* 28 NY2d 434, 438; *Lombardi v Nyquist,* 63 AD2d 1058, 1059).

The school districts, for this purpose joined by BOCES, next contend that, even if a program takeover was effected, the petitioners are not entitled to the benefits of the statute because they were not employed in the specific program taken over. By its terms, section 3014-b comes into play when "a school district duly takes over the operation of a program formerly provided by [BOCES]". It then confers rights upon "each teacher employed in such a program by [BOCES] at the time of such takeover" (Education Law, § 3014-b, subd 1). Appellants and BOCES maintain that, construing the statute narrowly as we are obliged to do (see, e.g., *Pauk v Board of Higher Educ. of City of N. Y.,* 62 AD2d 660, 667, affd 48 NY2d 930), we must conclude that the petitioners are not within the ambit of the statute because they were not employed in the itinerant teaching program. In our view, this conclusion is neither consistent with the underlying purpose of the legislation nor required by its language.

As manifested by the memoranda submitted to the Legislature in support of enactment of the statute, and as made plain by the language of the provision itself, the purpose of section 3014-b is to afford a BOCES teacher protection, consistent with his tenure and seniority status,

when his position is affected by a takeover of a BOCES program. It was the intent of the statute that a school district taking over a program would no longer be free to hire probationary teachers to staff its newly established equivalent program. Instead, it was contemplated that those programs would be staffed by teachers excessed by BOCES as a consequence of the takeover. Those teachers were to be considered employees of the district and were to retain their tenure status. The argument now advanced by the appellants and BOCES would do much to subvert that statutory scheme.

When budgetary constraints or other considerations require BOCES to abolish a teaching position, it is obligated by law to discontinue the services of a teacher having the least seniority within the tenure area of the position abolished, regardless of the program in which he serves (see Education Law, § 2510, subd 2; *Matter of McArdle,* 15 Ed Dept Rep 425). It is undisputed that, in BOCES, teachers in the same tenure area staff a variety of different programs. Thus, since it is unlikely that the least senior teachers will all serve in the same program, it is reasonable to expect that any excessing required because of a program takeover will have an impact upon teachers employed in programs other than the one taken over. Indeed, that is precisely what happened here.

The adoption of the appellants' position, therefore, would undermine the statute because it would mean that, in most cases, tenured BOCES teachers, excessed on account of a takeover, would be without rights as against the hiring of probationary teachers to staff newly created equivalent programs established by local districts to replace BOCES programs. Such a result would hardly be in keeping with the over-all statutory aim of providing job protection to teachers who have given years of satisfactory service (see, e.g., *Matter of Baer v Nyquist,* 34 NY2d 291, 295).

Nevertheless, appellants insist that we cannot reject their literal interpretation of the statute without, in effect, rewriting it and thus engaging in judicial legislation. We remain unconvinced that an interpretation consistent with the legislative intent is unavailable to us.

As earlier discussed, the statute provides that, when "a school district duly takes over the operation of a program formerly provided by [BOCES]," rights are conferred upon "each teacher employed *in such a program* by [BOCES] at the time of such takeover" (Education Law, § 3014-b, subd 1; emphasis supplied). The school districts here took over the BOCES itinerant teaching program for learning disabled and physically impaired students. In our view, it cannot be said that the petitioners were not employed "in such a program".

We find, therefore, that the language of the statute permits an interpretation which is consistent with its underlying purpose and intent. It is appropriate that we adopt such an interpretation (see, e.g., McKinney's Cons Laws of NY, Book 1, Statutes, §§ 92, 96) and, accordingly, we hold that section 3014-b of the Education Law was properly found applicable to the petitioners in the case at bar.

Finally, East Meadow and Hempstead argue that, even if section 3014-b is applicable to the petitioners, they waived their rights thereunder by accepting new full-time positions with BOCES. The record reveals that, in September, 1980, three of the petitioners were offered and accepted teaching positions with BOCES. Those positions were terminated, however, on October 24, 1980. Thereafter, in early 1981, all four petitioners were offered, and accepted, teaching posts with BOCES. The appellant school districts assert that the petitioners' conduct in accepting these positions amounts to a waiver of whatever rights they had under section 3014-b. We do not agree.

The rights of tenured teachers may not lightly be put aside, but in some circumstances they may be effectively waived. At a minimum, however, any such waiver must be a knowing one, freely given (see *Matter of Abramovich v Board of Educ.*, 46 NY2d 450, 455). As the Court of Appeals has aptly observed in a somewhat different context, "It is not wise * * * in dealing with a personnel system to have too much confidence in the 'choices' made by a school teacher who must seek and receive accommodations from his superiors. Otherwise, doctrines of waiver and estoppel could be used facilely to avoid ever giving

tenure. The tenure statutes are intended to protect the teacher and not become a trap to those not guileful enough to avoid it" (*Matter of Baer v Nyquist,* 34 NY2d 291, 299, *supra* [per BREITEL, Ch. J.]).

■ In September, 1980, when three of the petitioners accepted positions with BOCES, they had not yet been alerted to the fact that they had been excessed the previous June because of a program takeover. Thus, they had no way of knowing that they had rights under section 3014-b. We cannot hold that the petitioners effectively waived rights about which they did not know.

Nor does the petitioners' acceptance of positions with BOCES in early 1981, amount to a waiver of their rights under the takeover statute. By commencing this proceeding, the petitioners asserted those rights which had been improperly denied them by the appellants. They were not required, as the price for the assertion of those rights, to remain without work until their positions were vindicated in court (cf. *Matter of Baden v Board of Educ.,* 65 AD2d 955).

The most obvious of the difficulties which plague section 3014-b is that it does not provide for its own implementation. Knowledge of a takeover will generally be had only by the school district involved. BOCES would generally know only that the district had withdrawn students from one of its programs, but would have no reason to know whether the district subsequently established an equivalent program of its own. And BOCES teachers, excessed in consequence of budgetary constraints, would have no way of knowing that the action had been caused by a program takeover.

The judgment of Special Term directed a procedure which reasonably implements the statute. The school districts are to notify BOCES of the fact of a takeover, and, in turn, BOCES is to give appropriate notification to affected teachers, thereby providing them with an opportunity to assert the rights conferred by the statute. Since without such a procedure the intent of the legislation would plainly be frustrated, Special Term properly resorted to the necessary implications and intendment of the statute (see *Law-*

*rence Constr. Corp. v State of New York,* 293 NY 634; McKinney's Cons Laws of NY, Book 1, Statutes, § 364). Its determination was proper.

The dispute in this case has arisen largely because section 3014-b of the Education Law is an ambiguous statute. We respectfully submit that it would prove enormously helpful were the Legislature to reconsider that section with a view toward clarifying the procedures to be followed in a situation like the one at bar.

THOMPSON, BRACKEN and BROWN, JJ., concur.

Judgment of the Supreme Court, Nassau County, dated May 19, 1981, affirmed insofar as appealed from, without costs or disbursements.