In the Matter of JOAN MOORE, Appellant, v BOARD OF EDUCATION, SMITHTOWN CENTRAL SCHOOL DISTRICT, et al., Respondents.

Second Department, April 7, 1986

APPEARANCES OF COUNSEL

*James R. Sandner (Stephen Mendelsohn* of counsel), for appellant.

*Cahn Wishod Wishod & Lamb (Eugene L. Wishod* and *Robert H. Cohen* of counsel), for Beatrice Travis, respondent.

*Martin J. Crowley (Patrick J. Russell* on the brief), for Board of Education, Smithtown Central School District, respondent.

## OPINION OF THE COURT

Per Curiam.

Petitioner Joan Moore was initially hired by respondent Board of Education, Smithtown Central School District (hereinafter the District) in 1974 as a part-time communications arts teacher. At the time of her initial appointment, she was provisionally certified to teach nursery school through the sixth grade and, in the subject area of English, the seventh through twelfth grade. As of September 1, 1978, petitioner attained permanent certification in those areas.

Petitioner continued as a part-time communications arts teacher until June 30, 1977. She was thereafter offered a position as a communication skills teacher to commence on September 1, 1977, with a three-year probationary period; petitioner accepted the appointment on October 31, 1977. She commenced her probationary period as a communication skills teacher and her name was shown on "reading seniority lists" dated February 1978 and October 1978, with an effective date of July 1, 1977.

While continuing to teach communication skills, petitioner followed a course of study to obtain a Master's degree and also to obtain certification as a reading teacher. She received provisional certification to teach reading from kindergarten to twelfth grade, effective September 1, 1979.

On June 12, 1979, prior to petitioner having obtained a certificate to teach reading, she was appointed, pursuant to a District resolution, as a reading teacher for a probationary period commencing September 1, 1979, and ending August 31, 1982. Petitioner was notified of this probationary appointment by a form dated June 12, 1979, a copy of which she signed and returned to the District on February 24, 1981.

In March 1980, the District issued a reading seniority list which showed petitioner as having seniority effective September 1, 1979, the date of the new probationary appointment, rather than from July 1, 1977, some two years and two months less than she claimed. Reading seniority lists issued in January 1981 and April 1981 also reflected the effective date of September 1, 1979.

On September 1, 1982, petitioner was awarded tenure as a reading teacher upon completion of the three-year probationary period. She continued to teach reading until June 30, 1983, when the District, because of declining student enrollments, abolished one position in the reading tenure area. Petitioner's employment was terminated in view of the fact that the District determined that she had the least seniority of any tenured reading teacher.

Petitioner thereafter commenced the instant proceeding, seeking: (1) annulment of the District's determination, (2) reassignment to her former position in the reading tenure area, and (3) a direction that the District pay her all salary and other benefits to which she claimed entitlement. Depositions were taken from petitioner, as well as from Fred Baron, the District's former director of personnel and David Dietz, its current assistant for personnel management. Following the taking of these depositions and the service of answers, the amended petition was dismissed. We agree with Special Term.

This court has previously stated that "[t]enure is acquired in a particular area after service for more than the required probationary period following an appointment by a board of education * * * The area in which the employee achieves tenure status is the area in which the probationary appointment was made" (Matter of Cole v Board of Educ., 90 AD2d 419, 424-425, affd 60 NY2d 941). In determining the tenure area in which a position falls, it is the "intent and policy of the school district" that controls (Matter of Schlosser v Board of Educ., 62 AD2d 207, 215, affd 47 NY2d 811; see also, Matter of Neer v Board of Educ., 61 AD2d 1014). Under the facts

herein, we find that petitioner could not begin to obtain reading seniority credit until September 1, 1979, and reject petitioner's claim that her service teaching communication skills should have been applied toward seniority credit in the reading tenure area prior to that date.

The record is replete with evidence as to the differences between the positions of teaching communication skills and of teaching reading. The deposition testimony of both Baron and Dietz, as well as Dietz' affidavit in support of the motion to dismiss the petition, demonstrate that petitioner's classroom experience prior to September 1, 1979 was not that of a reading teacher. Thus, Special Term correctly concluded "that the Communication Skills teaching was not in the tenure area of Reading. The scope involved in each was too disparate".

This conclusion is also buttressed by the fact that it was the chairpersons of the English department of each of the District's intermediate level schools who evaluated and supervised communication skills teachers and that all communication skills classes that were taught by teachers other than communication skills teachers were, with one exception, taught by English teachers. Furthermore, petitioner herself assumed, at the time of her initial probationary appointment to the position of communication skills teacher, that she was on the English seniority list because she dealt with the chairperson of the English department and when she subsequently first saw her name on a reading seniority list dated February 1978, petitioner asked Baron why she was on the list as it made no sense to her.

With respect to the impact and effect of the 1978 reading seniority lists on which petitioner's name appeared, we note that at the time of petitioner's probationary appointment to teach communication skills, she was certified to teach English but not reading and the appointing resolution recited the fact that she was properly certified as an English teacher. In any event, the existence and meaning of these lists was explained. According to Baron, the lists were issued by his office but never approved by the District at any time. The purpose of these lists was to advise teachers, as best as could be determined from relevant records, where they stood vis-à-vis others in their tenure area. They were not carved in stone but were in fact revised, as necessary, sometimes up to five times per year, if errors were perceived. Teachers whose names appeared on these early seniority lists but who actually taught communication skills were so listed due to the nonexistence of

a tenure area for their subject. The position of communication skills teacher had only been established two years prior to petitioner commencing the teaching of this course. The communication skills teachers had to be initially placed on some seniority list. Once the District realized that English was the appropriate tenure area for communication skills teachers, petitioner and others similarly situated were removed from the reading seniority lists and given English seniority credit for all their years of service as communication skills teachers. With respect to the District's current official seniority lists, those teachers who taught communication skills during the same period as petitioner and who continue to teach the same classes all appear on English seniority lists with effective dates as of their probationary appointments as communication skills teachers.

We therefore conclude that a tentative and preliminary choice made by the District involving a new subject area was later, in good faith, found to be mistaken and was corrected. Thus, the mere appearance of petitioner's name on the aforementioned reading seniority lists is insufficient to warrant granting her the relief she seeks.

In addition, petitioner ultimately signed and returned to the District in February 1981 a formal written acceptance of her probationary appointment, effective September 1, 1979, having taught in her new position in the interim. It is clear that prior to signing the acceptance form, petitioner was aware that in leaving communication skills and commencing duty as a reading teacher, she was "entering an entirely independent tenure area [in which her previous service] would not be relevant in determining seniority" *(Steele v Board of Educ.,* 40 NY2d 456, 463). The indicia which sufficiently alerted her to this fact included her appointment notice, which stated that her certification was in reading; the altered reading seniority lists of 1980 and 1981, changing the effective date of her appointment for purposes of seniority to September 1, 1979; her written and oral protests as to the commencement of the probationary terms of the appointment as a reading teacher; and the District's denial of that protest.

Thus, petitioner's employment was properly terminated when a reading position was abolished in 1983. Although she had received tenure, petitioner was least senior among the reading teachers, since her seniority credit commenced September 1, 1979. "[W]hen a position is abolished, in computing seniority status under subdivision 2 of section 2510, the teach-

er's prior service in an independent tenure area is not included" *(Matter of Cole v Board of Educ.,* 90 AD2d 419, 428, *supra).* Had petitioner chosen to continue as a communication skills teacher, she would have had seniority credit in the English tenure area dating back to September 1, 1977. Special Term accurately noted that petitioner had gambled and lost.

We further find that petitioner waived any rights she may have had to receive pre-September 1, 1979 seniority credit in the reading tenure area by formally accepting her probationary appointment as a reading teacher in the reading tenure area effective September 1, 1979. While a teacher's rights with respect to tenure and seniority should not be lightly set aside, they are not inviolate and are therefore waivable, "when [the] waiver is freely, knowingly and openly arrived at, without taint of coercion or duress" *(Matter of Abramovich v Board of Educ.,* 46 NY2d 450, 455, *cert denied* 444 US 845; *Matter of Feinerman v Board of Coop. Educ. Servs.,* 48 NY2d 491, 496-498); a waiver should not be implied or presumed *(Matter of Wiener v Board of Educ.,* 90 AD2d 832, 833, *appeal dismissed* 58 NY2d 1115). We are mindful that the relationship between a Board of Education and a probationary teacher is such that "courts should be slow to find a waiver foreclosing a teacher's rights" *(Matter of Lindsey v Board of Educ.,* 72 AD2d 185, 191).

However, in the instant matter, petitioner's acceptance of her appointment to the new three-year probationary appointment as a reading teacher, which she knew was considered an entirely independent tenure area from the one in which she had been serving, constituted a knowing waiver of her rights, if any, to challenge the District's refusal to grant her reading seniority credit for her services as a communication skills teacher. This was not a situation in which petitioner was led to believe that she was remaining in one tenure area although the teaching position was itself different *(cf. Matter of Zubal v Ambach,* 103 AD2d 927, 929). Thus, petitioner's situation is akin to that of the group of teachers in a Third Department case who had been clearly made aware, prior to signing their appointments, of the terms of such appointments, and who were unsuccessful in seeking to overturn those terms *(Matter of Kelland v Commissioner of Educ.,* 96 AD2d 979).

Finally, we also reject petitioner's contention that her waiver was not freely made. Petitioner argues that she was in no position to negotiate with the District, which had drafted the notice of appointment and required her to sign it, and that

her only option was to voice her disapproval, as she did. Thus, she maintains that she should not have been required, as the price for the assertion of her rights which she alleges were improperly denied, to remain without work until her position was vindicated in court *(Matter of Acinapuro v Board of Coop. Educ. Servs.,* 89 AD2d 329, 338).

Although the courts will not render advisory opinions with respect to relative seniority among teachers within a tenure area *(Matter of Greco v Board of Educ.,* 98 AD2d 721), it is not true that from 1979, when petitioner was appointed to the subject position, until June 1983, the date of her termination, she had no free choice to challenge the probationary appointment. Her assignment as a reading teacher to the reading tenure area was apparently voluntary and initiated by her, given her course work towards obtaining a Master's degree and certification as a reading teacher, which she obtained effective September 1, 1979. Furthermore, there is no indication that she could not have chosen to remain as a communication skills teacher as of September 1, 1979, accruing prospective English seniority to be added to her September 1, 1977 effective commencement date in that tenure area. The record reveals that this occurred for at least one other District teacher. In addition, other teachers of communication skills ultimately received tenure in that area in 1980. Furthermore, questions as to a teacher's proper tenure area and assignment within a tenure area present justiciable controversies *(Matter of Bell v Board of Educ.,* 61 NY2d 149; *Matter of Daly,* 23 Ed Dept Rep 226). Petitioner could have commenced a proceeding, prior to accepting her probationary appointment, for a determination of her correct tenure area.

Mollen, P. J., Gibbons, Thompson and Brown, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered October 22, 1984, affirmed, without costs or disbursements.